ALYSSA SCHUKAR and SCOTT OLSON,

       Plaintiffs,

      v.                      Case No.: 23-CV-880

KENOSHA COUNTY, SHERIFF DAVID G. BETH,
BRIAN DOE, WAUKESHA COUNTY, SHERIFF
ERIC J. SEVERSON, STEVEN ROBAKOWSKI,
FRANK MCELDERRY, NICHOLAS OLINGER,
RYAN JACOBS, KENOSHA COUNTY SHERIFF
DEPUTIES JOHN DOES 1-10, WAUKESHA
COUNTY SHERIFF DEPUTIES JOHN DOES 1-
10, and UNKOWN JOHN DOE LAW
ENFORCEMENT OFFICERS 1-10,

       Defendants.

## AMENDED COMPLAINT

NOW COMES Plaintiffs Alyssa Schukar and Scott Olson, by and through their attorneys, Cade Law Group, LLC, as for their <u>Amended</u> Complaint against the above stated Defendants (collectively "Defendants" unless otherwise noted) alleges and shows the Court as follows:

### INTRODUCTION

1.    This is an action whereby Plaintiffs Alyssa Schukar ("Schukar") and Scott Olson ("Olson")(collectively, "Plaintiffs") seek redress for deprivations under color of law of rights, privileges and immunities secured by the United States Constitution, the State of Wisconsin's Constitution, and the laws of the United States. Specifically, Plaintiffs seek redress for unlawful actions taken against them by Defendants related to their exercise of their rights under and violations of the First, Fourth and Fourteenth Amendments to the

United States Constitution, the State of Wisconsin's Constitution, and the laws of the United States, with respect to their freedom of speech.

**NATURE OF THE CLAIM**

2. Schukar brings this civil rights action pursuant to 42 U.S.C §1983 and state law claims. Schukar seeks damages for injuries sustained as a result of Defendants' violations of her constitutional rights. Schukar is a photojournalist which encompasses taking photos and communicating news via photos. Schukar was working a freelance assignment for the New York Times and was working on an assignment for the New York Times during the Kenosha protests over the unprovoked shooting of Jacob Blake. Schukar was taking photos of the demonstrators and various law enforcement agencies who were stationed outside of the Kenosha County Courthouse in Kenosha, Wisconsin.

3. Olson brings this civil rights action pursuant to 42 U.S.C §1983. Olson seeks damages for injuries sustained as a result of Defendants' violations of his constitutional rights. Olson is a photojournalist which encompasses taking photos and communicating news via photos. Olson was working on an assignment for Getty Images during the Kenosha protests over the unprovoked shooting of Jacob Blake. Olson was taking photos of the demonstrators and various law enforcement agencies who were stationed outside of the Kenosha County Courthouse in Kenosha, Wisconsin.

4. On the evening of August 25, 2020, a crowd had gathered to protest the shooting of Jacob Blake in Kenosha, Wisconsin, only days earlier. That evening, numerous rubber bullets (less than lethal rounds or munitions) were fired by law enforcement agents and officers into the crowd at the Kenosha County Courthouse. It is unclear how many rounds of munitions were fired.

5. One of the fired rubber bullets hit Schukar in her left hand, causing her

severe injury. She required surgery on that hand, and still is undergoing physical therapy:





6. One of the fired rubber bullets hit Olson in the head, causing him severe injury:



7. Plaintiffs were subjected to chemical agents, by Defendants – officer(s) of the Kenosha County Sheriff's Department (including Defendant David Beth) and the additional assisting agencies. Plaintiffs were subjected to this force without cause, in violation of their First Amendment right to freedom of speech, First Amendment right to be free from retaliation, Fourth Amendment and Fourteenth Amendment right against the use of excessive force, and Fourteenth Amendment right to due process, plus state constitutional violations. This excessive force and unconstitutional constraint on Plaintiffs' civil and constitutional rights resulted in physical injuries and emotional distress.

8. Plaintiffs seek to hold Defendants accountable for repeated violations of constitutional rights.

9. Defendants' actions, while unconstitutional in any context, are even more pernicious here because the use of excessive force specifically targeted peaceful demonstrators who assembled to protest police violence and brutality.

## JURISDICTION AND VENUE

10. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the First, Fourth, and Fourteenth Amendments to the United States Constitution and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Wisconsin, by citizens of the State of Wisconsin. Jurisdiction supporting Plaintiffs' claims for attorney fees and costs is conferred by 42 U.S.C. § 1988.

11. Venue is proper in the United States District Court for the Eastern District of Wisconsin, pursuant to 28 U.S.C. §1391(b)(2), in that this is the judicial district in which

the events giving rise to the claim occurred, and upon information and belief, a majority of the Defendants reside or transact business within this District.

**JURY DEMAND**

12.     Plaintiffs demand a trial by jury in this action on every one of their claims.

**PARTIES TO THIS COMPLAINT[1]**

13.     Plaintiff, Alyssa Schukar, is a citizen of the United States, and is and was at all times relevant herein a resident of the City of Arlington, State of Virginia.

14.     Plaintiff Scott Olson is a citizen of the United States and is and was at all times relevant herein a resident of the City of Chicago, State of Illinois.

15.     Defendant Kenosha County ("Kenosha County") is a municipal entity in the State of Wisconsin and is located at 1010 56th Street, Kenosha, WI 53140. Kenosha County is municipality organized under the laws of the State of Wisconsin and is a "person" subject to suit under 42 U.S.C. § 1983. It is authorized by law to maintain and operate a law enforcement agency by statute.

16.     Defendant David Beth was the Sheriff of Kenosha County during all the dates relevant to this complaint and he was in charge of the Kenosha Sheriff's Department ("KSD") located at 1010 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin. Beth is named both in his individual capacity and official capacity. Upon information and belief, Beth is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. In Beth's official capacity he had final responsibility for the policies and procedures of KSD. At all times pertinent and material to this Complaint, Beth was acting within the scope of his employment and under

---

[1] The following parties have been either previously dismissed or are no longer part of this action: Racine County, Chris Schmaling, Nicholas Kibler, City of Racine, Art Howell, City of Racine John Does 1-10, Ozaukee County, James Johnson, Ozaukee County John Does 1-10, City of Kenosha, Dan Miskinis, Village of Pleasant Prairie, Sauk County, Chip Meister.

color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

17.     Kenosha County Sheriff's Department ("KSD"), is an arm and division of Kenosha County located at 1010 55th Street Kenosha, WI 53140, authorized under and created by the laws of the State of Wisconsin. KSD, at the behest of Defendant City of Kenosha and in response to its request for assistance, provided material support for the City of Kenosha's Operations Plan against the demonstrators, including but not limited to committing its deputies, agents, and resources to the effectuation of the Operations Plan. KSD employs officers and agents, who are materially responsible for the seizure and injuries of Schukar and/or Olson through the use of unreasonable and excessive force, among other Constitutional violations.

18.     Defendant Waukesha County is a municipal entity in the State of Wisconsin and is located at 515 W. Moreland Blvd, Waukesha, WI 53188. Waukesha County is municipality organized under the laws of the State of Wisconsin and is a "person" subject to suit under 42 U.S.C. § 1983. It is authorized by law to maintain and operate a law enforcement agency by statute.

19.     Defendant Eric J. Severson, was the Sheriff of Waukesha County during all the dates relevant to this complaint and he was in charge of the Waukesha Sheriff's Department located at 515 W. Moreland Blvd, Waukesha, WI 53188 in the County of Waukesha, State of Wisconsin. Severson is named both in his individual capacity and official capacity. Upon information and belief, Severson is an adult citizen of the State of Wisconsin residing in Waukesha County, within the Eastern District of Wisconsin. In Severson's official capacity he had final responsibility for the policies and procedures of

the Waukesha Sheriff's Department. At all times pertinent and material to this Complaint, Severson was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

20. The Waukesha County Sheriff's Department is a division of Waukesha County, and at the behest of Defendant City of Kenosha and in response to its request for mutual aid, provided material support for the City of Kenosha's Operations Plan against the protesters, including but not limited to committing its officers, agents, and resources to the effectuation of the Operations Plan. The Waukesha County Sheriff's Department employs officers and agents, who are materially responsible for the seizure and injuries of Schukar and/or Olson through the use of unreasonable and excessive force, among other Constitutional violations.

21. Defendant Brian Doe was a Deputy during all the dates relevant to this Complaint for the Kenosha County Sheriff's Department. Upon information and belief, Doe is an adult citizen of the State of Wisconsin. At all times pertinent and material to this Complaint, Doe was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

22. Defendant Steven S. Robakowski was a Deputy during all the dates relevant to this Complaint for the Waukesha County Sheriff's Department. Upon information and belief, Robakowski is an adult citizen of the State of Wisconsin. At all times pertinent and material to this Complaint, Robakowski was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

23. Defendant Frank McElderry was a Captain during all dates relevant to this

Complaint for Waukesha County Sheriff's Department. Upon information and belief, McElderry is an adult citizen of the State of Wisconsin. McEldery was the unit commander at all times pertinent and material to this Complaint and was in charge of the Waukesha County Sheriff's Department response in Kenosha on August 25, 2020 and in that capacity had final responsibility for the policies and procedures. At all times pertinent and material to this Complaint, McEldery was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

24.     Defendant Nicholas Olinger was a Lieutenant during all dates relevant to this Complaint for Waukesha County Sherriff's Department. Upon information and belief, Olinger is an adult citizen of the State of Wisconsin residing within the State of Wisconsin. At all times pertinent and material to this Complaint, Olinger was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

25.     Defendant Ryan Jacobs was an Officer during all the dates relevant to this Complaint for the Delafield Police Department. Upon information and belief, Jacobs is an adult citizen of the State of Wisconsin. At all times pertinent and material to this Complaint, Jacobs was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

26.     Defendant Kenosha County Sheriff Deputies John Does 1 to 10, upon information and belief, are adults residing in Wisconsin and employees of the Kenosha County Sheriff's Department. At all times pertinent and material to this Complaint,

Kenosha County Sheriff Deputies John Does 1 to 10 were acting within the scope of their employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin. The Complaint will be amended to identify them by names when their identity is discovered.

27. Defendant Waukesha County Sheriff Deputies John Does 1 to 10, upon information and belief, are adults residing in Wisconsin and employees of Waukesha County Sheriff's Department. At all times pertinent and material to this Complaint, Waukesha County Sheriff Deputies John Does 1 to 10 were acting within the scope of their employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin. The Complaint will be amended to identify them by names when their identity is discovered.

28. Defendant Unknown John Does Law Enforcement Officers 1-10, upon information and belief, are adults residing in Wisconsin and employees of certain law enforcement agencies in the State of Wisconsin. At all times pertinent and material to this Complaint, these Unknown John Does Law Enforcement Officers 1-10 were acting within the scope of their employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin. The Complaint will be amended to identify them by names when their identity is discovered.

29. Defendants Kenosha County and Waukesha County shall be known, collectively, as the "Municipal Defendants". Defendants Beth, Severson, McElderry and Olinger shall be referred to, collectively, as the "Individual Supervisory Defendants".

30. Schukar filed a Notice of Injury, pursuant to Wis. Stat. § 893.80, on December 22, 2020, as required by law. A true and correct copy of the Notice of Injury is

attached hereto and incorporated herein as **Exhibit 1.**

31.    Schukar filed a Notice of Injury, pursuant to Wis. Stat. § 893.80, on December 15, 2022 as required by law. A true and correct copy of the Notice of Claim is attached hereto and incorporated herein as **Exhibit 2**.

32.    All of the Defendants are sued, where relevant, in their individual and official capacities. At all relevant and material times, these Defendants were acting under color of state law; pursuant to their authority as officials, agents, contractors, or employees of their respective police or governmental agencies; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. § 12131(1), and were deliberately indifferent to the constitutional, civil, and statutory rights of Schukar and Olson.

### STATEMENTS OF FACTS

33.    On August 23, 2020 Jacob Blake was shot seven times, four of which were in his back, by a City of Kenosha police officer Rusten Shesky.

34.    As a result of the near fatal shots to Jacob Blake, he is now paralyzed and will be under medical care for the rest of his life.

35.    In the days following the Jacob Blake shooting, the City of Kenosha saw numerous public protests against police brutality.

36.    Although the protests were overwhelmingly peaceful, the Kenosha Police Department ("KPD"), Kenosha Sheriffs' Department ("KSD"), and other officers often used violent crowd control tactics against peaceful demonstrators.



37.     In response to the protests, Sheriff David Beth implemented an illegal (as to press) government curfew on August 24, 2020.

38.     Following the curfew, demonstrators, among other things, gathered in the park across from the Kenosha County Courthouse, which was barricaded with tall fencing along its perimeter.

39.     Law enforcement officers ("LEOs") were located inside of the fencing at the Courthouse, and when the crowd started to push against the fencing barricade, approximately thirty officers emerged and lined up in a defensive position with shields with insignia noting that they were either "Sheriff" and "Police".

40.     A group of LEOs would periodically approach the gaps in the fencing barricade to shoot projectiles at the crowd.

41.     Pursuant to KSD policy, prior to firing a projectile, an officer was supposed

to select a target based on numerous considerations. Thus, if the press corps was off to the side of the courthouse, they were either purposefully targeted or the shooter never acquired them as an appropriate target and just started shooting:

## DEPLOYMENT CONSIDERATIONS

### Targeting

- Users must be able to select target areas based on:
  - Their knowledge of their department Policy & Procedure.
  - Munitions performance.
  - Target size age and activity.

42. Schukar was hit at least one rubber projectile fired by LEO(s).

43. Olson also was hit by at least one projectile fired by a LEO(s).

44. Upon information and belief, and pursuant to an open records response, KSD admitted that Sgt. Brian Doe of the KSD fired in excess of 300 rounds of PAVA PepperBall rounds of non-lethal munitions into the crowd.

**KENOSHA SHERIFF'S DEPARTMENT**
**SUPPLEMENTARY INVESTIGATION REPORT**

| | Case or Event No. | No. of Pages<br>1 of 1 |
|---|---|---|
| **Date of Supplemental**<br>09/03/2020 | **Date Time Reported**<br>09/03/2020 21:42 | |

Involved Parties
Codes – C= Complainant  I= Involved Person  V=Victim  S=Suspect  R=Reporting Person

| Name    Last | First | MI    DOB    Race    Sex | Driver's License No. |
|---|---|---|---|
| Address | | City – State – Zip | Phone No. |

R – Doe, Brian  Sergeant #1345  Kenosha County Sheriff's Department

On 08/25/20 I was assigned to the Kenosha County Sheriff's Department Crowd Control Unit as a less-than lethal (PepperBall) operator. Beginning at approximately 2045 hours I was positioned on the roof of the Kenosha County Court House (southwest side) The Crowd Control Units role was to guard/protect the fence that had placed around the court house campus and to keep protesters/rioters away from the court house should the fence be breached. I was in place to provide back-up and cover to those maintaining a line between the fence and the court house and to deter those that were projecting items in our direction, at the court house, or were attempting to tamper with the fence.

Upon assuming my position I observed protesters/rioters attempting to rock the fence back and forth. They had also began projecting numerous items at the Crowd Control Unit. This included; water bottles, rocks, tools, fireworks, etc. Following these assaultive/destructive actions I began firing PAVA (a synthetic capsaicinoid) PepperBall rounds to deter these behaviors. My shots were directed at those identified as throwing or attempting to throw objects, those approaching the fence, and those creating barricades. I utilized direct hits when possible, aiming for the subject's torso. I also utilized area saturation when the subject was within a group or was barricaded. I also utilized area saturation several times when protesters/rioters refused to move away from or hindered the movement of the armored vehicles the Tactical Response Teams were operating out of.

At approximately 2200 hours the numerous crowd control teams maneuvered to the outside of the fence. At this time the Tactical Response Teams also began deploying additional chemical agents. The crowd was then driven away from the court house and out of the park across the street from the court house. I would estimate that I fired approximately three hundred PAVA rounds prior to the crowd being driven away. I did not fire any additional rounds for the remainder of the evening. END OF REPORT

45.     Upon information and belief, and pursuant to an open records response, WSD admitted that Deputy Robakowski of the WSD fired 6 rounds of SL6, 40mm non-lethal munitions.

46.     Upon information and belief, and pursuant to an open records response, WSD admitted that Officer Jacobs of the Delafield Police Department fired 10 rounds of SL6, 40mm non-lethal munitions.

47.     Upon information and belief, Defendants Doe, Robakowski and Jacobs fired

the projectiles into the crowd indiscriminately from a high vantage point on the roof of the Courthouse.

48.     Plaintiffs and the other members of the press corps maintained credentials on their body, along with high tech camera gear to capture the unfolding events. In addition, Plaintiffs and numerous other photo-journalists clearly had multiple cameras and other equipment that would suggest to any observer that they were members of the press corps and were not demonstrators or individual citizens.

49.      Although Plaintiffs clearly distinguished themselves as press and from the demonstrators, officers fired projectiles at Plaintiffs and the other press members, and when possible, Plaintiffs used objects like trees as cover and moved in groups with other photographers in an effort to make it obvious that they were not demonstrators but members of the press.

50.     At around 8:50 p.m. on August 25, 2020, Defendant LEOs released tear gas and the environment of the protest went from peaceful and safe to chaotic and unruly.

### SCHUKAR FACTS

51.     Schukar, as a member of the press, was wearing a helmet, a mask, goggles, and two professional-level cameras around her neck and body when the environment of the protest took a turn for the worst. When the environment shifted, Schukar decided to pull back to get an overview of the protests, waiting for the perfect moment to capture with her professional cameras. She was standing about thirty yards southeast of the demonstrators and about thirty yards south of the police line at the Courthouse.

52.     After pulling back, Schukar was observing the protests with her hand resting on her camera strap in the middle of her body. While resting her hand on her camera strap, she felt a sudden impact and pain in her hand.

53. When Schukar looked down at her hand, her left index finger was mangled and disfigured, it bent inward at its base.

54. Schukar checked the immediate area around her, she was alone – no one had approached her, no one was within a yard of her, she knew that she must have been hit by a projection from a gun. Concerned that other projectiles could be fired, she fled that area quickly to receive medical attention.

55. Later that evening, she told one of the security team members that she thought her hand was struck by "a rubber bullet because there was no powder or residue -- just a loud thunk."

56. Immediately after being struck by a projectile, Schukar searched the protest grounds for the medic area, which was set up about a half of block east on the steps of the Kenosha Area Convention and Visitors Bureau at 812 56th Street.

57. Law enforcement vehicles were lined up on Sheridan Road on the east side of the park, but no officers offered Schukar help despite some of the officers observing that Schukar was injured.

58. Schukar subsequently drove herself to Aurora Medical Center at 10400 75th Street in Kenosha, Wisconsin for treatments of her injuries.

59. As a result of being shot in the hand, Schukar's left phalanx is permanently disfigured, and she may never get a full range of motion back in her finger.

<u>**OLSON FACTS**</u>

60. Olson was on assignment on August 25, 2020, covering the unrest in Kenosha, Wisconsin.

61. On that evening Olson witnessed a large group of demonstrators gathered in a park across from the Kenosha courthouse. Police were posted up behind a temporary

fencing that had been erected in front of the Kenosha County Courthouse. The police were using a variety of "less lethal" munitions, including tear gas, pepper balls and rubber bullets in their attempt to control the crowd.

62. A small group of activists, probably less than a dozen, using a dumpster for cover, moved within 50 feet of the police line. Olson was photographing this group at about the same distance to the police line but about 20 or 30 feet west of the group of activists.

63. Olson was maybe 30 to 50 feet away from any other protestors who were gathered in the park. He believed one or two other people, both news photographers, were near him. The situation was only mildly intense so Olson was not in any form of defensive posture. Olson was facing the activists with his left side toward the police. After standing there for a few minutes taking occasional pictures of the activists behind the dumpster, Olson was struck in the side of the head by a projectile fired from the police position.

64. After the impact, Olson was dazed and had lost most of his hearing. He grabbed the side of his head and began to move away from the area. When Olson removed his hand from the side of his head it was covered with blood. After about a half an hour the hearing began to return but the bleeding and pain continued.

65. Olson returned to his hotel later that evening, cleaned the wound, saw that some cartilage on his ear had been ripped and that there was a lot of bruising. The next day, Olson contacted his doctor at the Lakeside VA facility in Chicago. After examining the injury via tele-med, his doctor suggested that Olson go to the ER at the VA facility in North Chicago. At the ER they examined the injury, explained that he had waited too long

to receive stitches and they used glue to secure it. They bandaged the wound, administered a tetanus shot, and put him on a course of antibiotics.

66. Olson has a lot of experience covering civil unrest including the unrest in Ferguson, Missouri following the death of Michael Brown, the unrest in Minneapolis following the death of George Floyd, and Chicago following the death of Laquan McDonald. He also has covered civil unrest in Canada during the G8 conference in Toronto and more recently the COVID trucker protests in Ottawa. He has covered unrest in the streets of Haiti during the coup that removed President Jean-Bertrand Aristide from office and civil unrest in Ukraine when Russian sympathizers began to overrun the city of Donetsk. In short, Olson is an experienced photographer with knowledge of how to handle himself in difficult and dangerous situations.

## GENERAL FACTS

67. At no time did Schukar or Olson engage in any unlawful, dangerous, or destructive behavior towards law enforcement or the Courthouse, or other government property.

68. Neither Schukar or Olson witnessed any destructive or unlawful behavior by any members of the press corps.

69. Upon information and belief, officer(s) of the Kenosha County Sheriff's Department and/or all other Defendant Departments and/or additional assisting agency, deployed multiple canisters of smoke and chemical gas into the crowd with wanton disregard for the safety, health or wellbeing of those protesters. Said officer(s) also:

    a. targeted members of the press corp., including Schukar and Olson, with "less than lethal" munitions;

b. issued no warning of the impending use of force; and,

c. made no attempts to protect the safety, health, or wellbeing of individuals simply standing in the same direction of their targets.

70. In doing so, said LEOs exhibited a careless disregard for the safety, health, and wellbeing of the protesters, and subjected persons such as Plaintiffs to unnecessary, unreasonable, and excessive force.

71. Defendant LEOs intentionally terminated or restrained Plaintiffs' freedom of movement by applying excessive physical force, including the use of "less than lethal" munitions and chemical agents and other means. In doing so, Defendant LEOs seized Schukar and Olson.

72. At the time Schukar was shot, she was not engaged in any activity that threatened property, police officers, or the safety of any other individual. Schukar made no attempts to tamper with a deployed chemical agent canister, nor did the Schukar issue any threat or exhibit any behavior that would lead a reasonable officer to believe she was a threat.

73. At the time Olson was shot, he was not engaged in any activity that threatened property, police officers, or the safety of any other individual. Olson made no attempts to tamper with a deployed chemical agent canister, nor did the Olson issue any threat or exhibit any behavior that would lead a reasonable officer to believe he was a threat.

74. Once finally clear of the chemical agent, Schukar was asked if she was okay by a demonstrator and assisted by other demonstrators to get to a safer area to evaluate her injuries. The assisting demonstrators then began to call for a medic to tend to Schukar's injuries.

75. At all times herein, the policies, custom and practice, force and threat of force used by the Defendants, acting in concert, jointly and severally with the other defendants was unnecessary, excessive, and unreasonable.

76. The acts of the Defendant LEOs described herein, all while acting under color of law and pursuant to customs, policies, and/or customs and practices of KSD and the other Defendants through their constituent law enforcement agencies or departments, were unreasonable, excessive, and performed in violation of Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments.

77. As a direct and proximate result of the acts and conduct of the Defendants described herein, Schukar sustained the following injuries and damages, among others:

   a. Physical injuries to her left hand, as a result of the Defendants' use of non-lethal munitions against her;
   b. Emotional and psychological injury, including but not limited to post-traumatic stress and anxiety;
   c. Pain, suffering, mental anguish, public and private humiliation, embarrassment, and emotional distress, past and future;
   d. Deprivation of civil liberties and constitutional rights;
   e. Medical and pharmaceutical expenses, as well as lost wages, past and future; and,
   f. Other non-economic damages, economic damages, and compensatory and special damages.

78. As a direct and proximate result of the acts and conduct of the Defendants described herein, Olson sustained the following injuries and damages, among others:

   a. Physical injuries to his head, as a result of the Defendants' use of non-lethal munitions against him;
   b. Emotional and psychological injury, including but not limited to post-traumatic stress and anxiety;
   c. Pain, suffering, mental anguish, public and private humiliation, embarrassment, and emotional distress, past and future;
   d. Deprivation of civil liberties and constitutional rights;
   e. Medical and pharmaceutical expenses, as well as lost wages, past and future; and,

f.   Other non-economic damages, economic damages, and compensatory and special damages.

79.   The below diagram shows locations of Jacobs, Robakowski, and Plaintiffs on the night of August 25, 2020, per deposition testimony taken in this matter:



80.   Based upon testimony of Robakowski and Jacobs, both admit to expending rounds of less than lethal weaponry on August 25, 2020.

81.   Based upon testimony under oath, Robakowski and Jacobs expended less than lethal rounds from the second story of the Kenosha Courthouse, and also from the

ground between 56th and 57th street.

82.    As alleged above, Robakowski, Jacobs, and Doe expended several rounds each of less than lethal weaponry, but none claim that their expended ordinances struck Plaintiffs. *See Packard v. Budaj,* 86 F.4th 859, 866-867 (10th Cir. 2023)(denying summary judgment on behalf of two protestors struck by less than lethal weaponry because a genuine dispute of material fact existed as to whether the named officers were involved in the alleged violations.); *see also Jones v. City of Los Angeles*, 2023 WL 2558789, *11 (C.D.Cal., Jan. 24, 2023)(dispute issues of material fact existed as to whether a less than lethal round fired by an identified defendant struck plaintiff, which prevented summary judgment).

## **CLAIMS FOR RELIEF**

### **COUNT 1**
### **42 U.S.C. § 1983 - First Amendment Violation**
### **– Freedom of Speech, Association and Peaceful Assembly**

83.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

84.    By photographing the civil unrest – the protests in Kenosha - Plaintiffs were engaged in expression protected by the First Amendment to the United States Constitution.

85.    At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their capacities as officers of the various LEOs, whether directly or under mutual aid agreements.

86.    Each of the Defendants are "persons" under 42 U.S.C. § 1983.

87. The First Amendment's robust free-speech protections apply equally to both members of traditional media and other members of the public, including independent journalists.

88. The Defendants did not have any compelling governmental reason—or any legitimate governmental reason at all—for using force against Plaintiffs.

89. Defendants restricted Plaintiffs' free-speech rights generally and right to engage in journalism via photography specifically, and therefore Defendants' conduct was unconstitutional.

90. The actions of Defendants – specifically, the use of excessive force against members of the media, such as Plaintiffs – is expected to chill a reasonable person from engaging in an activity protected by the First Amendment.

91. Defendants chilled Plaintiffs from engaging in an activity protected by the First Amendment, Schukar was unable to continue photographing and reporting on the protests in Kenosha County after Plaintiffs were injured.

92. Plaintiffs' expressions were on a matter of public concern and did not violate any laws.

93. Plaintiffs' expressions occurred at a traditional public forum.

94. The actions of Defendants were a content-based and/or viewpoint-based restriction of Plaintiffs' expressions.

95. The actions of Defendants were not a reasonable time, place, and manner restriction on speech.

96. Some of the Defendants, whether known by name or not, failed to intervene to prevent the Defendants who fired non-lethal munitions from violating Plaintiffs'

constitutional rights and failed to stop unlawful acts.

97.     At the time when Defendants stopped Plaintiffs from speaking and gathering, Plaintiffs had a clearly established constitutional right under the First Amendment to the United States Constitution to gather, express themselves, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

98.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

99.     Defendant Kenosha County has a custom, policy, or practice of tolerating violations of the First Amendment of the United States Constitution.

100.    Defendant Kenosha County's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiffs' constitutional rights.

101.    KSD failed to properly supervise and/or train its officers or the officers of associated law enforcement agencies providing assistance to the KSD under agreements for mutual aid.

102.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries, damages, and losses.

103.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiffs of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

104.    For these violations of his First Amendment rights, Plaintiffs are seeking, where available, damages, declaratory relief, and injunctive relief against Defendants.

## COUNT 2
### 42 U.S.C. § 1983 - First Amendment Violation – Retaliation

105. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

106. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their capacities as officers of various LEOs providing assistance to the Kenosha County Sheriff's Department under agreements for mutual aid.

107. Defendants are "persons" under 42 U.S.C. § 1983.

108. By photographing the civil unrest, to communicate news of police brutality via photography, Plaintiffs were engaged in expression protected by the First Amendment.

109. Defendants subjected Plaintiffs to chemical agents and "less than lethal" munitions in response to the content of Plaintiffs' speech because it questioned police violence.

110. Defendants' actions constituted unlawful retaliation for the exercise of their First Amendment rights because Defendants did not like the coverage of police violence in general.

111. Defendants exhibited an animus against Plaintiffs' exercise of their First Amendment Rights and utilized the force of the State against Plaintiffs in retaliation.

112. The actions of Defendants – specifically, the use of excessive force against members of the media such as Plaintiffs – can be expected to chill a reasonable person and a person of ordinary firmness from engaging in activity protected by the First Amendment.

113. Plaintiffs' expression was on a matter of public concern and did not violate any law.

114. Plaintiffs' expression occurred at a traditional public forum.

115. Defendants jointly and on their own accord responded to Plaintiffs' First Amendment protected activity with retaliation, including but not limited to use of physical force, including chemical agents and "less than lethal" munitions.

116. By unlawfully using force against Plaintiffs, Defendants sought to punish Schukar for exercising her First Amendment rights, to silence her, and to deter her from gathering and reporting in the future.

117. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

118. Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their First Amendment rights.

119. At the time when Defendants injured Schukar, she had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

120. At the time when Defendants injured Olson, he had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

121. Defendants failed to intervene to prevent each Defendant from violating

Plaintiffs' constitutional rights and failed to stop unlawful acts.

122. The customs, policies, and practice of Defendants using excessive force of people peacefully observing an assembly or exercising their right to freedom of speech is unreasonable and unjustified and violated the Plaintiffs' First Amendment rights to be free from retaliation.

123. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

124. Defendants stopped Plaintiffs from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Kenosha County.

125. Defendants Kenosha County and/or Waukesha County has a custom, policy, or practice of tolerating its officers' retaliatory violations of the First Amendment of the United States Constitution.

126. The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Kenosha County, Waukesha County, and the other Defendants LEOs, including Defendants Sheriff and Police Departments previously named.

127. Defendant Kenosha County's and Waukesha County's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiffs' constitutional rights.

128. Defendants Kenosha County and/or Sheriff Beth failed to properly supervise and/or train its officers or the officers of associated LEOs providing assistance to the Kenosha County Sheriff's Department under agreements for mutual aid.

129. Defendants Waukesha County and/or Sheriff Severson failed to properly

supervise and/or train its officers or the officers of associated LEOs providing assistance to the Waukesha County Sheriff's Department under agreements for mutual aid.

130. Defendants herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries, damages, and losses.

131. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiffs of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### <u>COUNT 3</u>
### 42 U.S.C. § 1983 - Fourth Amendment Violation – Excessive Force

132. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

133. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their capacities as officers of the Kenosha County Sheriff's Department, Kenosha Police Department, or other associated LEOs providing assistance to the Kenosha County Sheriff's Department under agreements for mutual aid.

134. Plaintiffs had a protected Fourth Amendment right against being victimized by the use of excessive force at the hands of law enforcement personnel.

135. Defendants did not have, at any time, a legally valid basis to seize Plaintiffs.

136. Defendants unlawfully seized Plaintiffs by terminating or restraining Plaintiffs' freedom of movement through means intentionally applied, and/or by means of excessive physical force, including the use of "less than lethal" munitions and chemical agents.

137. Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiffs' constitutional rights and failed to stop unlawful acts.

138. In light of the circumstances confronting them, Plaintiffs' actions were arbitrary and/or conscience shocking and/or objectively unreasonable.

139. Plaintiffs had committed no crime (nor could any of the Defendants have reasonably believed Plaintiffs had committed any crime) that would legally justify arrest or detention. Plaintiffs gave the officers no reason to fear for their safety. Both Schukar and Olson were obviously unarmed members of the press, and neither of the Plaintiffs were resisting arrest or fleeing.

140. Defendants did not have a legally valid basis to seize Plaintiffs in the manner and with the level of force used under the circumstances presented.

141. Defendants recklessly created a situation in which they used force.

142. At the time when Defendants used excessive force against Plaintiffs, Schukar and Olson had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

143. Defendants engaged in these actions intentionally, willfully, maliciously, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiffs' constitutionally protected rights.

144. Defendants' use of force against Plaintiffs was unjustified, excessive, and unreasonable.

145. By using excessive force, Defendants violated the Plaintiffs' right to privacy

and bodily integrity protected by the Fourth and Fourteenth Amendments.

146. At all times herein, Plaintiffs did not harm anyone, and was not an imminent threat, nor any kind of threat to anyone or anything.

147. Defendants Kenosha County and Waukesha County had a custom, policy, or practice of tolerating violations of the Fourth Amendment of the United States Constitution.

148. The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Kenosha County including but not limited to, Defendants David Beth.

149. Defendants Kenosha County and Waukesha County's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

150. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries, damages, and losses.

151. Defendants' intentional actions or inactions as described herein intentionally deprived Schukar of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**<u>COUNT 4</u>**
**42 U.S.C. § 1983 - Fourteenth Amendment Violation — Excessive Force**

152. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

153. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their

capacities as officers of the Kenosha County Sheriff's Department or other associated law enforcement agencies providing assistance to the Kenosha County Sheriff's Department under agreements for mutual aid.

154. Such politically motivated retaliatory animus is not a legitimate, much less substantial or significant, government interest.

155. At the time of the events in question, the law was clearly established that retaliatory animus is not a legitimate, much less substantial, government interest. Any reasonable officer would have been on notice that selectively using their law-enforcement powers because of retaliatory animus violated the Equal Protection Clause.

156. As elaborated elsewhere in this complaint, the retaliatory animus was embodied in an official County policy or practice, and the retaliatory actions taken against Plaintiffs were attributable to County policymakers.

157. For these violations of his Fourteenth Amendment rights, Plaintiffs are seeking damages, injunctive relief, and declaratory relief against the City of Kenosha, County of Kenosha, Chief of Kenosha Police and the Sheriff of Kenosha, as well as damages against the remaining individual-officer defendants.

158. Defendant Kenosha County's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiffs' constitutional rights.

159. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries, damages, and losses.

160. Defendants' intentional actions or inactions as described herein intentionally deprived Schukar and Olson of due process and of rights, privileges, liberties, and

immunities secured by the Constitution of the United States of America.

**COUNT 5**
**42 U.S.C. § 1983 - Fourteenth Amendment Violation — Due Process**

161. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

162. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their capacities as officers and deputies of Kenosha County Sheriff's Department, or other LEOs providing assistance to the Kenosha County Sheriff's Department under agreements for mutual aid.

163. The orders issued by Defendants, and the authority on which those orders were based, were vague and not clearly defined.

164. The orders issued by Defendants, and the authority on which those orders were based, offered no clear and measurable standard by which Plaintiffs and others could act lawfully.

165. Defendants failed to intervene to prevent each Defendant from violating Plaintiffs' constitutional rights and failed to stop unlawful acts.

166. The orders issued by Defendants, and the authority on which those orders were based, failed to provide people of ordinary intelligence a reasonable opportunity to understand what conduct they prohibited, and authorized or encouraged arbitrary and discriminatory enforcement, or both.

167. At the time when Defendants violated Plaintiffs' due process rights, Schukar and Olson had a clearly established constitutional right under the Fourteenth Amendment to the United States

168. Constitution to be afforded due process of law. Any reasonable law enforcement officer knew or should have known of this clearly established right.

169. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiffs' constitutionally protected rights.

170. Defendants has a custom, policy, or practice of tolerating violations of the Fourteenth Amendment of the United States Constitution.

171. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries, damages, and losses.

172. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiffs of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**<u>COUNT 6</u>**
**Failure to Train and Supervise**
**(Against Municipal and Individual Supervisory Defendants**
**– pursuant to Wisconsin Law)**

173. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

174. These Defendants actions and inactions resulted in injury to Plaintiffs, and caused them pain and suffering, among other things.

175. At all material times to this Complaint, Defendants had a duty to hire, train and supervise properly trained personnel to provide adequate and appropriate police duties and actions, and had a duty to properly train and supervise the police officers and sheriff deputies regarding their duties and obligations under the First, Fourth and

Fourteenth Amendments.

176. But for the failure of Defendants to properly supervise their agents, officers and employees under state law, Plaintiffs would not have suffered their injuries and great conscious pain and suffering, and other forms of damages.

177. As a direct and proximate result of the negligence of the Defendants, Plaintiffs suffered, among other things, conscious pain and suffering, great physical and emotional pain and suffering, medical expenses, among other damages, in an amount to be proven at trial.

## COUNT 7
### Violation of the Wisconsin Constitution Right to Free Speech

178. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

179. The Wisconsin Constitution, Article I, Section 3, provides, among other things, that: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press."

180. In issuing the curfew, Sheriff Beth did violate the freedom of the press, and in particular the rights of Plaintiffs, to restrain their ability to report on the Kenosha demonstrations.

181. In firing projectiles at the crowd, Defendants Doe, Robakowski, McElderry, Olinger, and Jacobs did violate the freedom of the press, and in particular the rights of Plaintiffs, to restrain their ability to report on the Kenosha demonstrations.

182. As a result of these violations, Plaintiffs were harmed in an amount to be

determined by a jury.

**COUNT 8**
**Violation of the Wisconsin Constitution Right to Assemble**

183. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

184. The Wisconsin Constitution, Article I, Section 4, provides, among other things, that: "The right of the people peaceably to assemble, to consult for the common good, and to petition the government, or any department thereof, shall never be abridged."

185. In issuing the curfew order, Defendants did violate the freedom of the press, and in particular the rights of Plaintiff, to restrain their ability to peacefully assemble and report on the Kenosha demonstrations.

186. In firing projectiles at the crowd, Defendants Doe, Robakowski, McElderry, Olinger, and Jacobs did violate the freedom of the press, and in particular the rights of Plaintiffs, to restrain their ability to peacefully assemble and report on the Kenosha demonstrations.

187. As a result of these violations, Plaintiffs were harmed in an amount to be determined by a jury.

**COUNT 9**
**Assault**

188. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein

189. In firing multiple projectiles at the crowd, and in particular towards Plaintiffs and other members of the press, Defendants Doe, Robakowski, McElderry, Olinger, and

Jacobs threatened to commit bodily harm.

190. Defendants Doe, Robakowski, McElderry, Olinger, and Jacobs did commit an act of assault on Plaintiffs in firing his projectiles.

191. As a result of the assault, Plaintiffs were harmed in an amount to be determined by a jury.

## COUNT 10
### Battery

192. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein

193. Battery is defined in Wisconsin as the intentional causation of bodily harm to the person of another without that person's consent.

194. Wisconsin permits civil claims for battery. *See* Wis. Stat. § 893.57.

195. Battery is considered an intentional tort.

196. Schukar did not consent to being fired upon and injured.

197. Olson did not consent to being fired upon and injured.

198. In firing projectiles at the crowd, and in striking Plaintiffs, Defendants Doe, Robakowski, McElderry, Olinger, and Jacobs did commit an act of battery on either of them.

199. As a result of the battery, Plaintiffs were harmed in an amount to be determined by a jury.

## COUNT 11
### State Law Indemnification (Wis. Stat. § 895.46)

200. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein

201.    The allegations set forth in this Complaint are against various government officers and/or LEOs.

202.    That at all times material hereto, Defendants were carrying out their duties as agents of the various government or law enforcement agencies and were acting within the scope of their respective employment.

203.    That the conduct of Defendants, as set forth in the preceding paragraphs, resulted in injuries to Plaintiffs.

204.    That Defendant government agencies are liable, pursuant to Wisconsin Statute Section 895.46, for any judgement entered against the Defendants in this action because, at all times material hereto, the Defendants were carrying out their duties as government officials, agents or law enforcement officers and were acting within the scope of their respective employment.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully demand relief, jointly and severally against all Defendants, as follows:

a.    Compensatory damages for the physical, emotional, and economic injuries suffered by Schukar and Olson by reason of the Defendants' unconstitutional, unjustified, excessive, and unreasonable actions and policies, in an amount fair, just, and reasonable and in conformity with the evidence at trial;

b.    Compensatory damages for Olson for his assault, battery, and the violations of her state constitutional rights in an amount fair, just, and reasonable and in conformity with the evidence at trial;

c.    Compensatory damages for Olson for his assault, battery, and the violations

of his state constitutional rights in an amount fair, just, and reasonable and in conformity with the evidence at trial;

d.      Punitive and exemplary damages to the extent allowable by law;

e.      Attorneys' fees and costs as allowed, pursuant to 42 U.S.C. §1988; and

f.      Such other and further relief as appears just and proper.

g.      That the governmental agencies are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the Defendants in this action because Defendants were acting within the scope of their employment when they committed the above-mentioned actions.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

Dated this 6th day of September, 2024

**CADE LAW GROUP LLC**

By: s/Madison Bedder
    Nathaniel Cade, Jr. SBN: 1028115
    Antonique C. Williams, SBN: 1051850
    Annalisa Pusick SBN: 1116379
    Madison Bedder, SBN: 1121996
    P.O. Box 170887
    Milwaukee, WI 53217
    (414) 255-3802 (phone)
    (414) 255-3804 (fax)
    nate@cade-law.com
    antonique@cade-law.com
    annalisa@cade-law.com
    madison@cade-law.com

    Attorneys for Plaintiffs