# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALYSSA SCHUKAR and SCOTT
OLSON,

                Plaintiffs,

v.

KENOSHA COUNTY, SHERIFF
DAVID G. BETH, BRIAN DOE,
WAUKESHA COUNTY, SHERIFF
ERIC J. SEVERSON, STEVEN
ROBAKOWSKI, FRANK
MCELDERRY, NICHOLAS
OLINGER, RYAN JACOBS,
KENOSHA COUNTY SHERIFF
DEPUTIES JOHN DOES 1–10,
WAUKESHA COUNTY SHERIFF
DEPUTIES JOHN DOES 1–10, and
UNKNOWN LAW ENFORCEMENT
JOHN DOES 1–10,

                Defendants.

Case No. 23-CV-880-JPS

# ORDER

## 1.      INTRODUCTION

This case concerns the treatment of two photojournalists—Alyssa Schukar ("Schukar") and Scott Olson ("Olson") (together, "Plaintiffs")—by law enforcement officers during protests in Kenosha, Wisconsin about the police shooting of Jacob Blake in August 2020. *See generally* ECF No. 56. Defendants Kenosha County, Sheriff David G. Beth, Brian Doe, Waukesha County, Sheriff Eric J. Severson, Steven Robakowski, Frank McElderry, Nicholas Olinger, and Ryan Jacobs (collectively "Defendants" for purposes of this Order), whose identities and roles are delineated below, jointly move

for summary judgment on Plaintiffs' federal constitutional, state constitutional, and state law claims against them. ECF No. 63; *see* ECF No. 64 at 2. Defendants additionally move to sanction Plaintiffs under 28 U.S.C. § 1927 for "excess costs, expenses, and attorneys' fees reasonably incurred because of Plaintiffs' conduct in litigating summary judgment." ECF No. 74. Both motions are fully briefed. ECF Nos. 64, 71, 73, 75, 76, 79. For the reasons and on the terms explained below, Defendants' motion for summary judgment will be granted. Defendants' motion for sanctions will be denied.

## 2.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a) and *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 248 (7th Cir. 2015)). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of*

*Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (collecting cases). "Summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Com. Underwriters Ins. Co. v. Aires Env't Servs., Ltd.*, 259 F.3d 792, 795 (7th Cir. 2001) (citing *Wolf v. N.W. Ind. Symphony Soc.*, 250 F.3d 1136, 1141 (7th Cir. 2001)).

### 3.    RELEVANT FACTS[1]

#### 3.1    Undisputed Facts

On August 25, 2020, Schukar and Olson were working as photojournalists covering protests in Kenosha related to the shooting of Jacob Blake two days earlier. By 8:30 p.m. that evening, law enforcement officers ("LEOs") were stationed in a line in front of the Kenosha County Courthouse behind a temporary fence. The LEOs were facing crowds of protesters who were gathered in the streets to the south, the grassy median dividing 56th Street in front of the courthouse, and in Civic Center Park. Here is an aerial view of the area at issue:

---

[1]In accordance with the Court's protocols, ECF No. 3, the parties have jointly prepared and submitted statements of undisputed and disputed facts, from which the Court draws the below summary. ECF Nos. 66 (disputed facts) and 69 (undisputed facts). Where facts are undisputed, the Court omits any citation to the record. Where the parties dispute a fact or the legal significance thereof, the Court notes the dispute and includes citations to the parties' submissions and/or the underlying record. Irrelevant facts, including those pertaining to parties against whom Plaintiffs are not pursuing any claims, *see infra* Section 4, are omitted. Citations to the record will be omitted from the Court's later legal analysis.



The courthouse is to the north, Civic Center Park is to the south, and the grassy median in between divides 56th Street. 57th Street is south of Civic Center Park and Sheridan Road is to the east of the courthouse and Civic Center Park.[2] This image does not show the temporary fence, but it was

---

[2]The parties jointly offer this and the following images and do not dispute that they accurately represent the area in question. The Court will presume the same and will further presume that the images are oriented north-south. For ease

located just beyond the grass and sidewalk on the south side of the courthouse. *See* ECF No. 71 at 19.

The protests were widely covered by the media, both social and traditional. There were several banners at the protests, and the body camera footage from the protests reveals loud chants of "Black Lives Matter." Among other things, protesters were launching water bottles, bricks, rocks, and mortar-grade fireworks at the line of officers and at nearby armored vehicles.

Neither Schukar nor Olson was wearing any visible press clothing, but both had press credentials worn inside their shirts, and both carried two large cameras and other equipment.

At approximately 9:30 p.m., while the line of LEOs was still behind the fence at the courthouse, Schukar was standing on the eastern end of the median dividing 56th Street. She was facing north when she was struck in the left hand with an object. The red star on the following image shows Schukar's location when her hand was struck:

---

of reference, the Court has labeled the courthouse, 56th Street, Civic Center Park, and Sheridan Road in all images.



Earlier in the night, Schukar had been struck by a pepper ball,[3] and she does not believe that the object that struck her hand at 9:30 p.m. was a pepper ball. Schukar was not engaged in violent or destructive behavior when she was struck.

Between approximately 9:30 p.m. and 9:47 p.m., Olson was also positioned near the median dividing 56th Steet. He saw a group of protesters launching fireworks at the line of LEOs stationed in front of the courthouse behind the fence. The protesters then hid themselves behind a dumpster that had been wheeled up to the same median. Olson was standing to the west of the overturned dumpster when an object struck his left ear. On the following image, the yellow star shows Olson's location

---

[3] A pepper ball is a projectile used for "riot and crowd control" that "[c]ombines chemical agent exposure with kinetic impact and pain." ECF No. 72-5 at 11.

when his ear was struck, and the orange square is the location of the dumpster:



Olson is certain that the object that struck him was not a pepper ball, and believes it was a rubber bullet. He was not engaged in violent and/or destructive behavior when he was struck.

Defendant Brian Doe ("Officer Doe") was employed by Kenosha County Sheriff's Office ("KCSO") on August 25, 2020. Defendant Steven Robakowski ("Deputy Robakowski") was employed by the Waukesha County Sheriff's Office ("WCSO") at that time and was part of the multijurisdictional Waukesha County Civil Disturbance Unit ("CDU") that

responded to requests for mutual aid. Defendant Ryan Jacobs ("Officer Jacobs") was employed by the Delafield Police Department ("DPD") at that time and was also part of the CDU.

The parties cannot identify any other less-than-lethal munitions launched in the relevant area between 9:00 p.m. and 10:00 p.m. on this night other than those launched by Officer Doe, who fired pepper balls, and Officer Jacobs and Deputy Robakowski, who fired munitions as follows.

Officer Doe was stationed on the roof the courthouse. He was armed only with a weapon capable of firing pepper balls. He discharged approximately 300 rounds of pepper balls at persons and objects over the course of the night. Officer Doe only targeted persons engaged in violent or destructive behavior, although he could not always tell whether he hit his target because of the cloud burst from the munition.

Deputy Robakowski deployed a total of six 40mm foam baton rounds[4] and Officer Jacobs deployed a total of ten 40mm foam baton rounds on the night of August 25, 2020. Deputy Robakowski testified that the purpose of launching these munitions was "to impede" a person. ECF No. 68-3 at 10 ("Q[:] Is it fair to say that the point of launching ammunition out of the 40-millimeter launcher is to get someone to stop doing what they're doing? [Defense attorneys' objection to form] [A:] It's to impede their ability to do so."); *id.* ("Q[:] What was the point of doing it? What was your

---

[4]The parties also reference "rubber bullets." ECF No. 69 at 4, 10; ECF No. 64 at 4 – 7, 10; ECF No. 71 at 8. Foam baton rounds and rubber bullets are different things, but serve the same purpose: less-than-lethal alternatives to live ammunition, typically used for crowd or riot control. *See Baton round*, WIKIPEDIA, https://en.wikipedia.org/wiki/Baton_round [perma.cc/FB8S-DFPA] (last visited Sept. 5, 2025). The Court will presume the parties are using the terms foam baton rounds and rubber bullets interchangeably.

objective? A[:] To stop that behavior. Q[:] What behavior? A[:] The throwing of objects at . . . all the officers there . . . . The destruction of equipment."). He testified that he did not deploy these munitions to disperse people. *Id.* ("Q[:] Did you ever deploy ammunition out of the launcher to get people to disperse? A[:] No. Those rounds are not for – intended to disperse people. The person, but not a group of people, no.").[5]

Officer Jacobs and Deputy Robakowski were initially positioned in a courtroom on the southwest side of the second story of the courthouse. They were stationed at two different windows inside that courtroom, with Officer Jacobs positioned at the east window and Deputy Robakowski positioned at the west window. On the following image, the blue circle indicates Deputy Robakowski's location and the yellow circle indicates Officer Jacobs's location:

---

[5]This testimony is not referenced in the parties' fact submissions; rather, Plaintiffs point to it in their opposition brief. ECF No. 71 at 18–19. This was improper under the Court's protocols, and the Court would be entitled to disregard it. *See* ECF No. 3 at 9 ("The parties should omit a facts section from their briefing; the Court will only consider the . . . statement[s] of facts."); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[D]istrict judges are entitled to insist on strict compliance with local rules designed to promote clarity of summary judgment filings." (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817–18 (7th Cir. 2004))). Nevertheless, because Defendants do not dispute that Deputy Robakowski so testified and because the testimony is relevant to the summary judgment analysis, *see infra* Section 4.3, the Court includes it here.



The line of LEOs were still behind the temporary fence in front of the courthouse, and crowds were protesting in the street and in Civic Center Park when Officer Jacobs and Deputy Robakowski deployed munitions from their positions in the courthouse. The parties submit as undisputed that Officer Jacobs and Deputy Robakowski could only deploy rounds at targets located on the western half of 56th Street and Civic Center Park because of the type and design of the windows where they were stationed. ECF No. 69 at 6. Officer Jacobs and Deputy Robakowski testified that they only targeted protesters who were actively engaged in threatening behavior toward LEOs, and claim that they did not target any protesters because of any viewpoint. Neither officer knew what any given protester's viewpoint was.

Officer Jacobs deployed five rounds while stationed on the second floor of the courthouse. He fired three rounds at Target 1, a female in pink, and observed one round strike Target 1 and two rounds hit the ground in front of her. He fired two rounds at Target 2, a male holding an umbrella,

and observed one round hit the dumpster and one round hit the umbrella. The yellow diamonds on the image below indicate Target 1 and Target 2's locations when Officer Jacobs fired these rounds:



Deputy Robakowski fired four rounds from the second-floor window of the courthouse. He fired at two men who were actively throwing objects at LEOs. Both men were in the western half of Civic Center Park; their general position at the time Deputy Robakowski fired rounds at them is indicated on the image below with a large blue circle:

Case 2:23-cv-00880-JPS    Filed 09/26/25    Page 11 of 54    Document 83



Only one of Deputy Robakowski's four rounds deployed from inside the courthouse was "effective" (a term the parties use presumably to denote that the round struck a person).

Later that night, Deputy Robakowski and Officer Jacobs left the courthouse from the rear of the building. By the time they arrived in front of the courthouse, the line of LEOs and the crowd were gone from that location. Deputy Robakowski and Officer Jacobs then traveled diagonally through Civic Center Park from the northwest corner to the southeast

Case 2:23-cv-00880-JPS    Filed 09/26/25    Page 12 of 54    Document 83

corner. *See* ECF No. 69 at 11 (map marked with these officers' direction of travel).

Deputy Robakowski was at ground level near the southeast corner of Civic Center Park when he deployed two additional rounds of foam baton rounds at two men who were throwing tear gas and mortar fireworks at LEOs. The location of these two men is shown with small blue circles on the image below. Only one of Deputy Robakowski's two[6] rounds deployed while inside the park was effective and he does not state if he saw where the other two rounds went. Officer Jacobs was at ground level near the intersection of Sheridan Road and 57th Street when he fired a single foam baton round at Target 3 on Sheridan Road. The location of this person is shown with a small yellow circle on the image below. The parties do not state whether this shot was effective.

---

[6]The parties' undisputed fact statement says "four" here, ECF No. 69 at 9, but the Court presumes they mean two, consistent with the previous sentence and with their agreement that Deputy Robakowski fired a total of six rounds (four from the courthouse and two in Civic Center Park) the night of August 25, 2020, *id.* at 8.



In addition to the above, Officer Jacobs also fired four more foam baton rounds from an unstated location, and he cannot state where they went.

Plaintiffs note that Officer Jacobs "document[ed] only three of the ten total deployments in his use of force report because he claims those are the only ones to have been 'effective.'" ECF No. 71 at 7 (citing ECF No. 68-4 at 20); *see also* ECF No. 72-2 and ECF No. 68-4 at 20 (documenting "three observed strikes"). They also note that Deputy Robakowski "only completed a use of force report for one of the two struck individuals." ECF No. 71 at 7 (citing ECF No. 68-3 at 12 (Deputy Robakowski stating that his omission of the second struck individual was an "error by [him]")); *see also* ECF No. 72-1. The content of the use of force reports is fundamentally consistent with the above-stated undisputed facts: that Officer Jacobs

deployed at least two, up to three, rounds that struck people, and that Deputy Robakowski deployed two rounds that struck people.[7]

Neither Plaintiff saw the object that struck them at any time, nor did they see anything on the ground that might have hit them. Neither Plaintiff knows what struck them, but both believe that they were hit with rubber bullets based on the injuries they sustained. Neither Plaintiff saw any LEO directly point any weapon toward them and neither knows who deployed the object that struck them. Neither Plaintiff did or said anything indicating that they had any particular viewpoint or agenda about law enforcement. Neither Plaintiff spoke with any LEOs prior to being struck.

### 3.2 Disputed Facts

Defendants assert that Deputy Robakowski and Defendant Jacobs "did not deploy any . . . rounds at . . . Olson or Schukar." ECF No. 66 at 1. Plaintiffs argue that this assertion is "speculative and implicates credibility questions that only a jury can determine [because] Officer Jacobs cannot account for all rounds deployed, and [Deputy] Robakowski expended four rounds that he claims did not strike his purported target." *Id.* (citing ECF No. 68-3 at 11 (Deputy Robakowski conceding that it was "possible that [he] missed any of [his] targets that night"); ECF No. 68-4 at 14–15 and 20–21 (Officer Jacobs discussing rounds he fired); and *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011)).

Defendants also assert that "[Deputy] Robakowski and [Officer] Jacobs only deployed munitions at protesters actively engaging in

_____

[7]Plaintiffs again include this material in their opposition brief rather than in either statement of fact, which was improper under the Court's protocols. *See supra* note 5. Nevertheless, because the material that Plaintiffs offer is consistent with the parties' statement of undisputed facts, the Court includes it here.

threatening behavior toward officers, and they never intentionally shot at any person who was not actively threatening officers." *Id.* at 2. Plaintiffs again argue that this assertion is speculative and leaves a credibility question for a jury to determine. *Id.* at 3 (citing same material as first disputed fact).

Finally, Defendants assert that "[Officer] Doe only deployed pepper balls at persons he could positively identify as threatening officers or attempting to project items in the officers' direction, and he never intentionally shot at any person who was not throwing or attempting to throw an object at officers." *Id.* Plaintiffs argue that this too is "speculative and [creates] a credibility question for the jury . . . [because Officer] Doe expended over 300 pepper balls [and was] unable to determine if his rounds always struck individuals." *Id.* (citing *Greene*, 660 F.3d at 980).

**4.      ANALYSIS**

Before examining Defendants' arguments for summary judgment, the Court must address some housekeeping as to which claims in Plaintiffs' operative complaint remain live, against whom, and on what theories of liability. Upon review of the operative complaint, ECF No. 56; the parties' briefing, ECF Nos. 64, 71, 73; stipulation of dismissal, ECF No. 52; and an executive summary of Defendants' instant motion, ECF No. 60; the live claims are as follows. First, Plaintiffs assert the following federal constitutional claims via 42 U.S.C. § 1983:

- A First Amendment claim that the use of force against Plaintiffs was a "content-based and/or viewpoint-based restriction . . . on speech," ECF No. 56 at 23;

- A First Amendment claim that the use of force against Plaintiffs was "unlawful retaliation . . . because Defendants did not like the coverage of police violence in general," *id.* at 25; and

- A Fourth Amendment claim that Plaintiffs were subjected to excessive force, *id.* at 28–30.

Plaintiffs also raised a Fourteenth Amendment due process claim, *id.* at 32–33, but informed the Court of their intention to "voluntarily dismiss" this claim, ECF No. 60 at 5. The Court will permit Plaintiffs to dismiss this claim; although the claim may well be time-barred, *see infra* Section 4.4, that issue is not before the Court so the dismissal will operate without prejudice. *See* Fed. R. Civ. P. 41(a)(2). Plaintiffs additionally stipulate in their briefing that their Fourteenth Amendment equal protection claim that officers treated Plaintiffs with "politically motivated retaliatory animus" and "selectively us[ed] their law-enforcement powers" against them, ECF No. 56 at 30–31, is duplicative of their First Amendment claims. ECF No. 71 at 25. The Court will dismiss this claim with prejudice because it is concededly duplicative of claims that the Court finds are unmeritorious. *Infra* Section 4.2; *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021) (explaining that adjudications on the merits equate to dismissal with prejudice and citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019)).

Plaintiffs also "concede that the supervisory defendants' conduct does not rise to a level of personal involvement at the time of injury." ECF No. 71 at 4 n.1 (citing *Stockton v. Milwaukee County*, 44 F.4th 605, 619 (7th Cir. 2022)). Accordingly, they state that Defendants David G. Beth ("Sheriff Beth"), Eric J. Severson ("Sheriff Severson"), Frank McElderry ("Captain McElderry"), and Nicholas Olinger ("Lieutenant Olinger")—none of whom

were on-scene the night of August 25, 2020, *see supra* Section 3.1—may be dismissed from this action. *Id.* In light of this concession, and because the Court finds no underlying constitutional violations, *see infra* Sections 4.1–4.3, the dismissal of Plaintiffs' First Amendment, Fourth Amendment, and Fourteenth Amendment equal protection claims against Sheriff Beth, Sheriff Severson, Captain McElderry, and Lieutenant Olinger will operate with prejudice. *White*, 15 F.4th at 808; *see also* Fed. R. Civ. P. 41(a)(2) (permitting the Court to dismiss an action "on terms that [it] considers proper"). Plaintiffs' First Amendment, Fourth Amendment, and Fourteenth Amendment equal protection claims proceed only against Officer Doe, Deputy Robakowski, and Officer Jacobs.[8]

Kenosha County and Waukesha County are presumably named as Defendants for purposes of a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). A *Monell* claim requires proof that the municipality had an "express policy that, when enforced, causes a constitutional deprivation" or a "widespread practice" of causing constitutional violations that was "permanent and well settled," or that the "plaintiff's constitutional injury was caused by a person with final policymaking authority" for the municipality. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d

---

[8]Plaintiffs also assert in the complaint that "Defendants," without differentiation, failed to intervene in other Defendants' alleged constitutional violations. ECF No. 56 at 23, 26–27, 29, 32. However, they do not mention this theory of liability in the briefing and has therefore abandoned that theory of liability. *See generally* ECF No. 71; *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming abandoned a claim that was not delineated in a brief in opposition to summary judgment (collecting sources)). The Court will therefore only consider claims against Officer Doe, Deputy Robakowski, and Officer Jacobs based on a theory of each officer's direct liability, rather than any officer's failure to intervene in another's actions.

381, 382 (7th Cir. 1995)). The operative complaint does not raise a standalone *Monell* claim or reference *Monell* at all, but asserts that the alleged underlying First and Fourth Amendment violations were the result of municipal policy, practice, or custom. *See* ECF No. 56 at 20, 24, 27. Also, in preparing to file summary judgment, Plaintiffs referenced a *Monell* theory of liability at least as to their Fourth Amendment claim. ECF No. 60 at 4.

However, Plaintiffs raised a *Monell* claim in their initial complaint for "permitting, ignoring[,] or condoning violations of the First[] [and] Fourth . . . Amendments . . . as a matter of custom, practice[,] and de facto policy through their individual policymakers," ECF No. 1 at 41–43; *see also id.* at 32, 35, 38 (referencing various Defendants' "customs, policies, and/or practices" that allegedly caused the underlying constitutional violations), but Plaintiffs later dismissed the *Monell* claim with prejudice, ECF No. 53 at 2.

Pursuant to Plaintiffs' prior stipulation of dismissal with prejudice of a *Monell* claim premised on the same underlying constitutional violations alleged in the operative complaint, any *Monell* claim that could arise based on the allegations in the operative complaint will stand dismissed with prejudice and the Court will not analyze it herein.[9] Similarly, to the extent Plaintiffs attempt to sue Sheriff Beth and Sheriff Severson in their official

---

[9]Plaintiffs also have not defended any *Monell* claim in the briefing on the instant motion for summary judgment. *See generally* ECF No. 71 (Plaintiffs' opposition brief, not referencing *Monell*); ECF No. 64 at 12 n.4 (calling on Court to "disregard[]" any *Monell*-related allegations). They have therefore abandoned this claim. *See Lattimore v. Kosciusko Cnty. Sheriff*, No. 3:22-CV-900-TLS-JEM, 2025 WL 1824845 (N.D. Ind. June 30, 2025) ("Plaintiff does not address these arguments or defend this claim in any way; thus he has abandoned his federal claim against [the municipal defendant]." (citing *Palmer*, 327 F.3d at 597).

Case 2:23-cv-00880-JPS    Filed 09/26/25    Page 19 of 54    Document 83

capacities, *see* ECF No. 56 at 6–7, or Captain McElderry as a final policymaker whose authority allegedly caused Plaintiffs' injuries, ECF No. 56 at 9, the Court will not analyze any *Monell* claim against these Defendants because such a *Monell* claim has been dismissed with prejudice. *See Helbachs Café, LLC v. City of Madison*, 571 F. Supp. 3d 999, 1008 (W.D. Wis. 2021) (describing a claim against "a municipal employee in their official capacity" as a *Monell* claim (citing *Monell*, 436 U.S. at 694)); *McCormick*, 230 F.3d at 324 (listing the decision of a policymaker for a municipality as one avenue for liability under *Monell*).

The operative complaint also includes various state law claims. Plaintiffs raise a state law failure to train claim against the "[m]unicipal and [i]ndividual [s]upervisory [d]efendants," ECF No. 56 at 33–34; claims for violations of Plaintiffs' rights under the Wisconsin constitution, *id.* at 34–35; claims for assault, *id.* at 35–36; for battery, *id.* at 35–36; and a claim for indemnification under Wisconsin Statutes § 895.46, *id.* at 36–37. In their briefing, however, Plaintiffs say that they are voluntarily dismissing the Wisconsin constitutional claims, the failure to train claim, and the indemnification claim under § 895.46, presumably as to every Defendant. ECF No. 71 at 28, 31–32. The Court will permit Plaintiffs to do so; the dismissal will operate without prejudice. *See* Fed. R. Civ. P. 41(a)(2).

This leaves Plaintiffs' claims for assault and battery as their only live claims under Wisconsin law. ECF No. 56 at 35–36. Plaintiffs raise these claims against Officer Doe, Deputy Robakowski, Captain McElderry, Lieutenant Olinger, and Officer Jacobs. *Id.* However, as noted above, Plaintiffs have conceded, at least for purposes of their § 1983 claims, that Captain McElderry and Lieutenant Olinger had no personal involvement in their injuries. ECF No. 71 at 4 n.1 (citation omitted). Although the parties

have not adequately briefed whether a personal involvement requirement akin to that required for § 1983 claims exists in Wisconsin law,[10] the Court opts to analyze the assault and battery claims only as to Officer Doe, Deputy Robakowski, and Officer Jacobs. Given that Captain McElderry and Lieutenant Olinger were not on-scene the night of August 25, 2020, the Court will not examine the assault and battery claims as to them.

Having clarified what claims remain live and at issue for the remainder of this Order, the Court will summarize Defendants' arguments for why they are entitled to summary judgment as to the remaining claims:

- All of Plaintiffs' claims fail for Defendants' lack of personal involvement in the alleged injuries, ECF No. 64 at 3–9;

- Plaintiffs' First Amendment claims fail for lack of causal connection, *id.* at 9–11;

- Plaintiffs' Fourth Amendment claim fails for lack of intent to restrain and/or because the use of force was objectively reasonable, *id.* at 12–17;

---

[10]Defendants cite a single case for this proposition, which, in the context of corporate agents and entities, holds that "an individual is personally responsible for his own tortious conduct." ECF No. 64 at 4 (citing *Oxmans' Erwin Meat Co. v. Blacketer*, 273 N.W.2d 285, 289 (Wis. 1979)). Plaintiffs do not discuss the requirements of personal involvement in Wisconsin tort law at all.

It is not clear how the *Oxmans'* holding maps onto the facts and claims raised in this case, especially since Wisconsin law recognizes vicarious or respondeat superior liability where there is a "close relationship between the person [who did not commit the tortious conduct] and the tortfeasor." *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 333–34 (Wis. 2004) (collecting sources). But "vicarious liability is a severe exception to the basic principle that one is only responsible for his or her own acts," so the Court would in any event "proceed with caution when asked to impose vicarious liability." *Lewis v. Physicians Ins. Co. of Wis.*, 627 N.W.2d 484, 488 (Wis. 2001).

- Defendants are entitled to qualified immunity on each of Plaintiffs' federal constitutional claims, *id.* at 20–23; and

- The Court should relinquish supplemental jurisdiction over Plaintiffs' remaining state law claims, *id.* at 34–35, find that all of Olson's and some of Schukar's claims are barred for failure to comply with Wisconsin's notice of claim requirement, *id.* at 23–24, or find that Plaintiffs' remaining state law claims are barred by discretionary immunity, *id.* at 26–27, 30–33.

The Court takes up each argument in turn.

### 4.1 Personal Involvement

Defendants correctly observe that Plaintiffs' federal constitutional claims against Officer Doe, Deputy Robakowski, and Officer Jacobs in their individual capacities "must be predicated on personal involvement by a defendant in the action, and that involvement must have caused the alleged violation." ECF No. 64 at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (italics removed)); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible [under § 1983]." (citing *Greeno v. Daley,* 414 F.3d 645, 656–57 (7th Cir. 2005); *Reed v. McBride,* 178 F.3d 849, 851–52 (7th Cir. 1999); and *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir. 1996))).

Defendants argue that the undisputed facts in this case demonstrate that Officer Doe, Deputy Robakowski, and Officer Jacobs did not have any personal involvement in Plaintiffs' alleged injuries and that Plaintiffs can

point only to speculation about what caused their injuries, which is insufficient to defeat summary judgment. ECF No. 64 at 3–9. For the following reasons, the Court agrees with Defendants as to Officer Doe, but disagrees as to Deputy Robakowski and Officer Jacobs.

The parties agree that neither Plaintiff saw any LEO directly point any weapon toward them and that neither knows who deployed the objects that struck them—i.e., that there is no direct evidence that Officer Doe, Deputy Robakowski, or Officer Jacobs caused Plaintiffs' injuries. *See* ECF No. 71 at 8. But Plaintiffs point out that (1) the parties cannot identify any *other* LEOs who deployed less-than-lethal munitions at the time and place of Plaintiffs' injuries and (2) neither Deputy Robakowski, Officer Jacobs, nor Officer Doe can account for all of the less-than-lethal rounds they fired. *Id.* at 7–9. Based on these facts, Plaintiffs argue, a jury would be able to circumstantially infer that Officer Doe, Deputy Robakowski, and/or Officer Jacobs must have shot, and did in fact shoot, the rounds that caused Plaintiffs' injuries, thereby precluding summary judgment. *Id.* ("One of [Officer Doe, Deputy Robakowski, or Officer Jacobs] must be accountable for the injuries." (citing *Greene*, 660 F.3d at 980)).

Plaintiffs' argument is a non-starter as to Officer Doe; there are no facts in the record or reasonable inferences that can be drawn to establish his personal involvement in any of the asserted constitutional violations. Officer Doe was armed only with a weapon capable of firing pepper balls. Olson is certain that the object that struck him was not a pepper ball, and Schukar believes that the object that struck her was not a pepper ball, based on the fact that she was struck by a pepper ball earlier in the night. Considering these undisputed facts, no rational jury could find or infer that Officer Doe fired the rounds that caused Plaintiffs' injuries, because

Plaintiffs disclaim (or in Schukar's case, at least sincerely doubt) that they were struck by the type of munition that Officer Doe was firing.

This is true even viewing the facts and drawing all reasonable inferences therefrom in favor of Plaintiffs. *Bridge*, 815 F.3d at 360 (citation omitted). Despite not seeing the objects that struck them or anything on the ground nearby that might have hit them, Plaintiffs are both certain or nearly certain that the objects that struck them were *not* pepper balls, and they have not provided any evidence to suggest that they were, in fact, struck by pepper balls. From Plaintiffs' own statements, it would not be reasonable to infer, nor would any rational jury conclude, that Plaintiffs were struck by pepper balls, because drawing such a conclusion would require a jury to make inferences that Plaintiffs themselves have rejected and that no evidence in the record supports. Finding for Plaintiffs would require relying on mere speculation—remote possibilities, which Plaintiffs' own statements disclaim—which is insufficient to defeat summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" (citations omitted)). If Plaintiffs testified at trial consistent with their depositions, no rational juror could conclude that Plaintiffs were more likely than not shot with the munitions that Officer Doe was firing, as there is no non-speculative material in the record from which a juror could draw this conclusion. *See Com. Underwriters*, 259 F.3d at 795 (citation omitted).

Plaintiffs' argument that a jury is required to test Officer Doe's credibility, *see supra* Section 3.2, is also insufficient to defeat summary judgment. Officer Doe's credibility regarding the pepper balls he fired is not the problem—Plaintiffs' concession that they were not struck by the

type of munitions he was firing is. A jury might be required to weigh Officer Doe's credibility if there was some non-speculative factual basis to connect the shots he fired with Plaintiffs' injuries, but again, there is no such factual material in the record. For all these reasons, Plaintiffs have failed to establish any genuine dispute of fact regarding whether Officer Doe was personally involved in their injuries—all available evidence demonstrates that he was not. Because Plaintiffs have not pursued any other theory of liability besides direct liability as to Officer Doe, *see supra* note 8, summary judgment is appropriate as to all of Plaintiffs' federal constitutional claims against Officer Doe.

Turning to Deputy Robakowski and Officer Jacobs, the Court will not grant summary judgment due to their lack of personal involvement because there is a factual basis from which a reasonable jury could conclude that Deputy Robakowski and Officer Jacobs caused Plaintiffs' injuries. To assist in evaluating the facts and the parties' arguments on this point, the Court compiled the images supplied by the parties into a single composite image that indicates the approximate relative positions of Deputy Robakowski (small blue circle), the targets that Deputy Robakowski fired at (large blue circle), Officer Jacobs (yellow circle), the targets that Officer Jacobs fired at (yellow diamonds), Olson (yellow star), the dumpster by which Olson was standing (orange square), and Schukar (red star), all at the time that Officer Jacobs and Deputy Robakowski were firing less-than-lethal rounds from the courthouse:

Case 2:23-cv-00880-JPS    Filed 09/26/25    Page 25 of 54    Document 83



Defendants argue that Deputy Robakowski and Officer Jacobs "could not have deployed any object that struck either Plaintiff based on the officers' positions relative to Plaintiffs' positions." ECF No. 64 at 6. Indeed, the parties stipulated that the type and design of windows at which Deputy Robakowski and Officer Jacobs were stationed only permitted the officers to deploy rounds at targets located in the western half of 56th Street and Civic Center Park. Considering this stipulation, Defendants' argument makes sense: from their positions in the courthouse, the two officers could reach only the targets marked with yellow diamonds and in the large blue

circle on the image above, but not Plaintiffs, who were located by the median in the eastern half of 56th Street, north of Civic Center Park.

Notwithstanding this stipulation, Plaintiffs argue that it is "illogical" to presume that Deputy Robakowski could have reached targets in the western half of 56th Street and Civic Center Park but not on the median on 56th Street, where Plaintiffs were located (indicated above with a yellow star for Olson and a red star for Schukar). In other words, Plaintiffs argue that it is unreasonable to assume that Deputy Robakowski could have struck a target that was farther away from him but could not have reached Plaintiffs, who were standing at a closer distance. ECF No. 71 at 6.

Plaintiffs' argument—despite being contrary to the parties' statement of undisputed facts—finds some footing in the record, albeit for a different reason than what Plaintiffs assert in this portion of their brief.[11] From his position in the courthouse, Officer Jacobs fired two rounds at Target 2, a male holding an umbrella, and observed one round hit a dumpster and one round hit the umbrella that Target 2 was holding. Olson was standing near a dumpster when he was struck. The parties have not indicated that there was any other dumpster in or around the area in which Plaintiffs and Target 2 were struck, so the Court will assume (favorably to Plaintiffs, *Bridge*, 815 F.3d at 360 (citation omitted)) that there was only one dumpster in the area and that the dumpster Officer Jacobs struck is the same one near which Olson was standing.

---

[11]Plaintiffs do raise arguments that track the Court's reasoning later in their brief with respect to their Fourth Amendment claims. *See* ECF No. 71 at 20–21 (arguing that Deputy Robakowski and Officer Jacobs could see the dumpster near which Olson was standing).

From all these facts, it would be reasonable to infer that Officer Jacobs fired the shot that struck Olson, because if Officer Jacobs fired at Target 2 and struck the dumpster near which Olson was standing, he conceivably could also have fired the shot that struck Olson. Defendants have failed to explain why Officer Jacobs's shot at Target 2 could have reached the dumpster but not Olson. At the very least, the fact that Officer Jacobs struck a dumpster—again, presumably the only one in the area, near which Olson was standing—while attempting to fire at Target 2 calls into doubt the notion that the design of the windows from which Officer Jacobs was firing did not permit him to make a shot in Olson's direction.[12] This is more than a mere "incantation of lack of credibility," as Defendants argue, ECF No. 73 at 8 (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988))—there is factual matter in the record that raises a question about Officer Jacobs's characterization of events.

Further, Officer Jacobs and Deputy Robakowski were stationed at windows in the same room, so if Officer Jacobs potentially could have fired the projectile that reached Olson, then it is reasonable to infer that Deputy Robakowski could have also done so. And since Schukar was located relatively near Olson on the other side of the dumpster, if Officer Jacobs's or Deputy Robakowski's shots could have reached Olson, then it is reasonable to infer that their shots from the courthouse could have reached Schukar as well.

---

[12]Plaintiffs also provide in their briefing an image that purports to show Officer Jacobs's view from inside the courthouse. ECF No. 71 at 19. This image was not submitted as part of the parties' fact statements and is not properly before the Court. *See supra* note 5. However, this image further suggests what the Court has reasoned herein: that Officer Jacobs and Deputy Robakowski could have seen and/or fired the objects that reached Plaintiffs.

However, no reasonable juror could find that the shots that Officer Jacobs or Deputy Robakowski fired while on the ground in Civic Center Park could have caused Plaintiffs' injuries. The parties do not say whether Plaintiffs moved at any time from their positions as indicated above, so the Court will presume that Plaintiffs were still located on the median of 56th Street, north of Deputy Robakowski and Officer Jacobs when they moved through Civic Center Park and fired shots there (two by Deputy Robakowski, and up to five by Officer Jacobs). Although neither officer can account for each of the shots he fired while in Civic Center Park, the officers stated that those shots that they could account for went towards targets on Sheridan Road, in almost the entirely opposite direction as where Plaintiffs were located. Nothing in the record supports a reasonable inference that any of the rounds they fired while in Civic Center Park somehow reached either Olson or Schukar.

That Officer Jacobs and Deputy Robakowski could have physically made the shots that caused Plaintiffs' injuries is only one part of the picture. There is also the question of which officer could have fired the rounds at Plaintiffs when considering how many shots each fired and those each officer can account for. Officer Jacobs testified at his deposition that he saw where each of the five shots that he fired from the courthouse landed, either striking Targets 1 or 2 or objects near them, and that he did not see any of his shots reach either Plaintiff. Because there is nothing to controvert it, this testimony makes it unreasonable to infer that Officer Jacobs fired the shots that caused Plaintiffs' injuries (or if he did, that he did so intentionally, *see infra* Sections 4.2 and 4.3). Deputy Robakowski testified that one of the four shots he fired from the courthouse was "effective." Since he does not indicate where his ineffective shots went or whether he saw where they

went, and in light of the above findings that he may have been positioned to fire the shots that hit Plaintiffs, there is some possibility that he in fact fired the shots that caused Plaintiffs' injuries.[13] Of course, as Defendants point out, protesters were throwing objects, including fireworks, so it is possible that Plaintiffs were struck and injured by one of these objects rather than those deployed by the officers. ECF No. 64 at 5.

But ultimately, the Court concludes that there is sufficient evidence from which to conclude that Deputy Robakowski and Officer Jacobs were in a position to fire less-than-lethal munitions toward Plaintiffs, and enough evidence to conclude that one of these officers' shots caused one or both of Plaintiffs' injuries. The Court therefore cannot agree with Defendants that Deputy Robakowski and Officer Jacobs had no personal involvement in Plaintiffs' injuries. There is at least a genuine factual dispute on this issue.

The Court will therefore proceed to Defendants' other arguments for summary judgment as to Officer Jacobs and Deputy Robakowski. Because the Court found no genuine factual dispute as to Officer Doe's lack of

---

[13]Plaintiffs attempt to manufacture a factual dispute by arguing that Deputy Robakowski and Officer Jacobs's deposition testimony is "inconsisten[t]" on how many shots each fired with how many each reported in use of force reports. ECF No. 71 at 5 (citations omitted). As noted *supra* Section 3.1, the content of those reports *is* consistent with the officers' testimony and the parties' agreed-upon facts. Moreover, there is no evidence that WCSO, DPD, or the CDU required Deputy Robakowski and Officer Jacobs to report all munitions fired irrespective of whether they hit a person or not, and even if there were, "the failure to follow departmental policy alone does not rise to the level of a constitutional violation." *Burke v. Warden*, No. 3:22-CV-375-JD-MGG, 2022 WL 2135714, at *2 (N.D. Ind. May 17, 2022) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) and *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008)). Any inconsistencies, then, do not impact the analysis of whether a reasonable juror could find that either Deputy Robakowski or Officer Jacobs fired rounds that hit either Plaintiff.

involvement in Plaintiffs' injuries, Plaintiffs' federal constitutional claims against Officer Doe will not be examined further.

### 4.2    First Amendment Claims

Defendants next argue that Plaintiffs' First Amendment claims[14] fail because "there is no evidence that any Defendant intentionally deployed" less-than-lethal munitions at Plaintiffs "<u>because</u> Plaintiffs were engaging in protected activity," i.e., that there is no causal connection between Officer Jacobs's and Deputy Robakowski's allegedly retaliatory conduct and Plaintiffs' injuries. ECF No. 64 at 9–11. The Court agrees.

Plaintiffs seem to frame their protected First Amendment activity as simply "journalizing the events of the August 2020 protests in Kenosha." ECF No. 71 at 10. And it is undisputed that Plaintiffs did nothing to indicate that they had any particular viewpoint about or agenda regarding law enforcement. Plaintiffs' primary argument, therefore, seems to be that they were targeted as journalists per se. *But see* ECF No. 56 at 25 (alleging that Defendants targeted Plaintiffs because "the content of Plaintiffs' speech . . . questioned police violence" and "because Defendants did not like the coverage of police violence in general") and ECF No. 71 at 15–16 (Plaintiffs asserting that a jury could "reasonably infer that [Deputy Robakowski and Officer Jacobs] may have had underlying intentions that were in direct conflict with [Plaintiffs'] journalism").

---

[14]The parties agree that Plaintiffs' two First Amendment claims are subject to the same jury instruction. ECF No. 64 at 9 n.3 (citing ECF No. 67 at 2–3 (parties' joint proposed jury instructions)). Defendants argue that the two claims are duplicative of one another, *id.*, which Plaintiffs do not rebut; in fact, they analyze the First Amendment claims together, *see* ECF No. 71 at 9–16. The Court thus analyzes both of Plaintiffs' First Amendment claims together in this Section.

Photographing a protest in a journalistic capacity is distinct from expressing a viewpoint during or about that protest, but irrespective of how Plaintiffs frame their activity, Defendants do not challenge that Plaintiffs were engaging in First Amendment protected activity. *See* ECF No. 64 at 9–11; ECF No. 71 at 10; ECF No. 73 at 10–11; *see also Nicodemus v. City of South Bend*, 137 F.4th 654, 663 ("[T]here is a First Amendment right to record the police in the execution of their duties in public spaces." (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 600–01 (7th Cir. 2012)); *Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co., Inc.*, 455 F. Supp. 1197, 1202 (N.D. Ill. 1978) (noting, in the journalistic privilege context, that "the news gathering process qualifies for First Amendment protection" (collecting cases) (footnote omitted)).

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To prevail on such a claim, Plaintiffs "must show a causal connection between a defendant's retaliatory animus and [their] subsequent injury." *Hartman*, 547 U.S. at 259 (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998) and *Mt. Healthy Cty. Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 285–87 (1977)). Plaintiffs may demonstrate a causal connection with "either direct or circumstantial evidence." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

Defendants posit that Plaintiffs must show "but-for" causation, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." ECF No. 64 at 9–10 (emphasis omitted) (quoting *Nieves*, 587 U.S. at 399). On the other hand, Plaintiffs argue that they need only show that their First Amendment activity was "at least a

motivating factor" in the officers' retaliation. ECF No. 71 at 9 (quoting *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020)).

Neither party is misquoting or misrepresenting precedent, but both are missing the whole picture, because "[p]reliminarily at summary judgment, the burden of proof is split between the parties." *Kidwell*, 679 F.3d at 965.

> Initially, to establish a prima facie case of retaliation, the plaintiff must produce evidence that his speech was at least a motivating factor—or, in philosophical terms, a "sufficient condition"—of the [defendant's] decision to take retaliatory action against him. . . . Then, the burden shifts to the [defendant] to rebut the causal inference raised by the plaintiff's evidence. If the [defendant] fails to counter the plaintiff's evidence, then the [defendant's] retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the but-for causation needed to succeed on his claim.

*Id.* (quoting *Greene*, 660 F.3d at 979–80) (footnote omitted). But "[i]n the end," i.e., at trial, it is the plaintiff's responsibility to establish but-for causation. *Id.*

Unfortunately for Plaintiffs, they fail to meet their initial burden. The undisputed facts fail to show that Plaintiffs' protected First Amendment activity was a motivating factor in Deputy Robakowski or Officer Jacobs allegedly having caused their injuries. *Kidwell*, 679 F.3d at 965. Plaintiffs were not wearing any visible press clothing or credentials but were carrying cameras and equipment. Viewing these facts in Plaintiffs' favor, the Court will presume that it was clear to Deputy Robakowski and Officer Jacobs that Plaintiffs were engaged in photojournalism. But even assuming that Deputy Robakowski and Officer Jacobs knew that Plaintiffs were members of the press, Plaintiffs have offered no evidence that Deputy Robakowski or

Officer Jacobs did not like press coverage of police or had any particular opinion about journalists to allow a reasonable inference that these two officers might have targeted Plaintiffs based on anti-journalist animus. *See Kidwell*, 679 F.3d at 966 (noting that circumstantial evidence of causation can include "behavior towards or comments directed at other [persons] in the protected group" (quoting *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009))).

Even if Plaintiffs had presented some evidence of animus, Defendants have "rebutted [any] causal inference" that could be drawn. *Kidwell*, 679 F.3d at 965. Deputy Robakowski and Officer Jacobs testified that they only targeted protesters who were actively engaged in threatening behavior toward LEOs and never intentionally shot at any person who was not actively threatening LEOs. Plaintiffs have not rebutted this testimony. Plaintiffs instead ask the Court to infer from an absence of evidence that something must have been amiss. The Court will not do so.

Plaintiffs have also failed to set forth any other evidence of causation. "Circumstantial evidence may include suspicious timing [or] ambiguous oral or written statements . . . ." *Kidwell*, 679 F.3d at 966 (quoting *Long*, 585 F.3d at 350). Plaintiffs point to Deputy Robakowski and Officer Jacobs's failure to complete "proper reporting" as circumstantial evidence of causation and/or as raising doubt about the officers' credibility. ECF No. 71 at 13. But potential deficiencies in reporting do not give the Court pause. *See supra* note 13. Moreover, the Court does not see any statement in those reports that would support an inference that Deputy Robakowski and Officer Jacobs harbored animus toward journalists. *See generally* ECF Nos. 72-1 and 72-2.

Plaintiffs further urge the Court to consider that Deputy Robakowski and Officer Jacobs "fail[ed] to account for all [munitions] deployed that night" as circumstantial evidence of causation. ECF No. 71 at 13 (citing *Kidwell*, 679 F.3d at 966). They suggest that Deputy Robakowski and Officer Jacobs having fired multiple less-than-lethal munitions in the vicinity of Plaintiffs and not knowing where they all went is "suspicious timing" as would support an inference of animus. *Id.* But this "right place, right time" argument only gets them so far.

Based in part on the lack of clarity regarding where each munition landed, the Court found above that Deputy Robakowski and Officer Jacobs could have fired shots which struck Plaintiffs and caused their injuries. But Deputy Robakowski and Officer Jacobs's potential personal involvement alone does not establish that Plaintiffs' journalism was "at least a motivating factor" in these officers' allegedly having caused Plaintiffs' injuries. *Kidwell*, 679 F.3d at 965. Again, this is because Plaintiffs have failed to adduce any evidence that Deputy Robakowski and Officer Jacobs targeted them because they are journalists. Without such evidence, the timing of Deputy Robakowski and Officer Jacobs's shots and Plaintiffs' injuries does not give rise to a reasonable inference that the officers' shots were retaliatory.

For all these reasons, the Court will grant Defendants' motion for summary judgment on Plaintiffs' First Amendment claims.

### 4.3    Fourth Amendment Excessive Force

Plaintiffs raise a Fourth Amendment claim that they were unlawfully seized through the use of excessive force, specifically, the use of

foam rounds.[15] Defendants argue that this claim fails because Plaintiffs cannot establish that Deputy Robakowski and Officer Jacobs intentionally targeted them, or the officers' use of force was unreasonable. ECF No. 64 at 12–17. The Court agrees on the first point and declines to address the second.

A Fourth Amendment excessive force claim requires proof that a "seizure occurred and that the . . . seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023) (citing *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010)). "Excessive force claims . . . resulting from a seizure are analyzed under the Fourth Amendment's objective reasonableness standard." *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999) (citing *Graham v. Connor*, 490 U.S. 386 (1989); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (holding that "courts must use an objective standard" in evaluating excessive force).

Defendants first challenge whether a seizure within the meaning of the Fourth Amendment occurred at all. ECF No. 64 at 14–15 ("[Any] application of force was either 1) accidental and intended for a different target; and/or 2) applied not with the intent to restrain but with the intent to disperse [individuals who were engaged in violent or dangerous behavior]. . . . Assuming Plaintiffs could even establish [personal involvement by Deputy Robakowski and Officer Jacobs], . . . the force in

---

[15]Defendants reference "tear gas" as one of the methods deployed in response to the August 25, 2020 protests, but the parties do not discuss any LEO's use of tear gas in their fact submissions. Plaintiffs do not, at this stage, argue or pursue claims that any Defendant used tear gas in a manner that caused their injuries. *See* ECF No. 71 at 25 (noting that a case is "irrelevant because it deals with tear-gas" (citation omitted)). Accordingly, the Court will not analyze whether any Defendant's use of tear gas constituted excessive force.

question cannot constitute a seizure under the Fourth Amendment." (citing *Torres v. Madrid*, 592 U.S. 306, 317 (2021))). With respect to whether a seizure occurred, Plaintiffs must provide evidence tending to show that Deputy Robakowski and Officer Jacobs "objectively manifest[ed] an intent to restrain" them when allegedly firing the munitions that injured Plaintiffs. *Torres*, 592 U.S. at 317 (emphasis omitted) (citing *Nieves*, 587 U.S. at 402–03). "Accidental force will not qualify" as a seizure or show intent to restrain. *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).[16]

Defendants argue that there is no evidence from which to infer that Deputy Robakowski and Officer Jacobs had an objective intent to restrain Plaintiffs, because the officers testified that they only targeted protesters who were actively engaged in threatening behavior toward LEOs, and Plaintiffs were not among this group. ECF No. 64 at 14. Plaintiffs have not

---

[16]Plaintiffs argue that Defendants improperly "blend the rule for 'seizure by force' and 'seizure by control.'" ECF No. 71 at 16–18. "[A] seizure by . . . control involves either voluntary submission to a show of authority or the termination of freedom of movement." *Torres*, 592 U.S. at 322. Plaintiffs argue that "this is a seizure by force case" because there was physical force to their bodies. ECF No. 71 at 17, 18–19.

The upshot of this distinction, Plaintiffs say, is that the Court must disregard most of the case law that Defendants cite because it supposedly pertains to a "seizure by control" theory. *Id.* at 17–18 (citing ECF No. 64 at 12–13). But Defendants cite this case law for the broader proposition that any application of force to Plaintiffs was accidental and therefore not a seizure of any kind. *See* ECF No. 64 at 13 ("[T]he protections of the Fourth Amendment against excessive force do not extend to innocent bystanders and hostages who are unintentionally injured . . . by officers attempting to restrain other individuals." (collecting cases)). And "[a]ccidental force will not qualify" as a seizure under the Fourth Amendment. *Torres*, 592 U.S. at 317 (citation omitted). Plaintiffs have not presented any authority saying that this principle applies only in "seizure by control" cases, so their distinction appears meaningless. In any event, the parties agree that intent to restrain must be shown to establish that a seizure occurred. ECF No. 71 at 18; ECF No. 73 at 12.

rebutted this testimony. *See* ECF No. 71 at 10 (Plaintiffs noting they were merely "journalizing" the events).

Instead, Plaintiffs, relying on a Ninth Circuit case, ask the Court to infer that Deputy Robakowski and Officer Jacobs had an objective intent to restrain Plaintiffs based on the type of less-than-lethal munitions that the officers used. ECF No. 71 at 18–19 (citing *Sanderlin v. Dwyer*, 116 F.4th 905, 913 (9th Cir. 2024); other citations omitted); *id.* at 22 ("[B]y firing a 40mm projectile at Plaintiffs, Defendants Jacobs [and] Robakowski . . . objectively manifested an intent to restrain Plaintiffs . . . ."). The defendant officer in *Sanderlin* launched 40mm foam baton rounds at the plaintiff protester, which are the same munitions that Deputy Robakowski and Officer Jacobs fired. 116 F.4th at 913. Record evidence, including police department training materials and testimony by the officer, showed that "[t]he method of force [the defendant officer used] is, by its nature, intended to incapacitate its target." *Id.* From this, the Ninth Circuit held that a reasonable trier of fact could conclude that the officer "objectively manifested an intent to restrain" the plaintiff and therefore seized him. *Id.* The court also considered that the plaintiff, "while carrying a sign over his head . . . purposefully placed himself in front of officers to block" officers' view of two other nearby "subjects [allegedly] holding gallon paint cans," who the officer "believed . . . were poised to throw the paint cans at police officers." *Id.* at 909. "[O]fficers had blanket authority to use 40mm foam baton rounds throughout the protests as defense weapons against 'specific individuals who posed a threat of serious injury to the officers or others.'" *Id.* at 908. The defendant officer yelled to the plaintiff, "I'm going to hit you, dude. You better move!" the plaintiff "fail[ed] to immediately comply" and the officer then fired a foam round at him. *Id.* at 909.

The Court is not persuaded to apply the holding in *Sanderlin* to this case. Like the defendant officer in *Sanderlin*, Deputy Robakowski testified that "[his] objective" or "the point" of firing 40mm foam round munitions is to impede a person's ability to continue their current actions. ECF No. 68-3 at 10. But the officer's testimony was not the only information available to the *Sanderlin* court. Unlike the department policy referenced in that case, here, Plaintiffs have not pointed to any police department policy or training material specifying the purpose of firing foam rounds.[17] Without more, Deputy Robakowski's testimony establishes his subjective intent in firing the rounds that he fired, which is not relevant in the excessive force analysis. *Deering*, 183 F.3d at 650; *see also Taylor v. City of Milford*, 10 F.4th 800, 809 n.4 (7th Cir. 2021) (noting officer's subjective intent was "irrelevant"). This testimony at most provides a small insight into what the objective intent of the LEOs on scene was.

Even if the Court adopted the *Sanderlin* court's finding that the use of 40mm foam baton rounds is "by its nature, intended to incapacitate its target," 116 F.4th at 913, there is not sufficient evidence to conclude that Deputy Robakowski and Officer Jacobs, in firing such rounds, objectively manifested an intent restrain Plaintiffs specifically. *See Torres*, 592 U.S. at 311 (explaining that a seizure "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person" (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))); *Sanderlin*, 116 F.4th at 913 ("A reasonable trier of fact viewing this evidence could conclude that by

---

[17] Plaintiffs reference "pepper ball training." ECF No. 71 at 19. But since neither Deputy Robakowski nor Officer Jacobs fired pepper balls, *see supra* Section 4.2, and since the Court has found that Officer Doe (who did fire pepper balls) was not involved in Plaintiffs' injuries, *see id.*, this information is irrelevant.

firing a 40mm projectile at Sanderlin's groin, [the defendant officer] objectively manifested an intent to restrain *Sanderlin*." (emphasis added)).

In *Sanderlin*, the plaintiff was allegedly obstructing the defendant officer's view of other protesters who the officer believed were posed to injure other officers or civilians. The defendant officer was responding to the plaintiff's particular behavior, manifesting an intent to restrain that plaintiff specifically. In contrast, Plaintiffs here were not being violent or destructive, so they indisputably did not fit the criteria that Deputy Robakowski and Officer Jacobs used to decide on whom to fire. *See* ECF No. 69 at 3–4. The objective information available to the officers was that various protesters were being violent or destructive, throwing items at LEOs. *Id* at 3. Plaintiffs have not rebutted Deputy Robakowski and Officer Jacobs's testimony that they targeted only protesters who were actively engaging in threatening behavior towards LEOs. *Id.* at 6–7. Plaintiffs therefore effectively concede that these two officers had no reason to fire at Plaintiffs. The Court cannot conclude that, by firing at *other* individuals engaged in threatening behavior that Plaintiffs were not engaging in, Deputy Robakowski and Officer Jacobs manifested an intent to restrain Plaintiffs. Instead, all available evidence demonstrates that if one of Deputy Robakowski or Officer Jacobs's foam rounds struck and injured Plaintiffs, it was accidental, which "[does] not qualify" as a seizure. *Torres*, 592 U.S. at 317 (citation omitted).

For these reasons, the Court finds that there is not sufficient evidence from which a reasonable jury could find that Deputy Robakowski and Officer Jacobs seized Plaintiffs within the meaning of the Fourth Amendment. Without a seizure, Plaintiffs' Fourth Amendment claim fails as a matter of law, and Defendants are therefore entitled to summary

judgment on this claim. The Court therefore need not address whether the use of force was reasonable.

Additionally, because the Court has found that there is no genuine dispute of material fact to advance any of Plaintiffs' federal constitutional claims beyond summary judgment, the Court will not address Defendants' qualified immunity arguments. ECF No. 64 at 20–23.

### 4.4 Doe Defendants

Plaintiffs have maintained this action against, in addition to Defendants discussed above, nominal defendants Kenosha County Sheriff Deputies John Does 1–10, Waukesha County Sheriff Deputies John Does 1–10, and Unknown Law Enforcement John Does 1–10 (together, "Doe Defendants"). ECF No. 56 at 1. Defendants argue that, "to the extent that Plaintiffs continue to maintain this action against various Doe Defendants, . . . [a]ny federal claims against the Doe Defendants are now time-barred." ECF No. 64 at 8. Plaintiffs' position at summary judgment appears to be that no other officer besides Deputy Robakowski, Officer Jacobs, or Officer Doe was involved in Plaintiffs' injuries. ECF No. 71 at 2 ("There is nothing more Plaintiffs can do to identify other potential culpable parties . . . ." (emphasis omitted)); *see id.* at 9 ("It is . . . undisputed that [Deputy] Robakowski, [Officer] Jacobs, and [Officer] Doe are the only officers that could have possibly struck the Plaintiffs . . . .").

To the extent that Plaintiffs anticipate asserting their federal claims against any John Doe in the future, the Court agrees with Defendants. "Section 1983 claims must be brought within the statute of limitations for personal injuries in the state where the claim arose." *Kane v. Milwaukee County*, No. 25-cv-1124-bhl, 2025 WL 2374472, at *3 (E.D. Wis. Aug. 14, 2025) (citing *Huber v. Anderson*, 909 F.3d 201, 207 (7th Cir. 2018)). "Under

Wisconsin law, the applicable statute of limitations for Plaintiff[s'] Section 1983 claims is three years." *Id.* (citing *Jacobs v. Schermitzler*, No. 22-C-386, 2022 WL 1736179, at *3 (E.D. Wis. Dec. 1, 2022) and WIS. STAT. § 893.53); *see also* WIS. STAT. § 893.54. The events giving rise to Plaintiffs' injuries occurred on August 25, 2020, so any claims based on those injuries must have been raised by August 25, 2023. Plaintiffs filed suit in July 2023 and have not identified any John Doe defendants in any subsequent pleading. Plaintiffs' claims against the various Doe Defendants will therefore be dismissed with prejudice from this action. *See Herrera v. Cleveland*, 8 F.4th 493, 496–98 (7th Cir. 2021) (holding that claims against Doe defendants do not relate back under Fed. R. Civ. P. 15(c)(1)(C); *Czesak v. Kashyap*, No. 1:24-cv-01006-JEH, 2025 WL 1104976, at *5 (C.D. Ill. Apr. 14, 2025) ("[C]laims against Defendant 'John Doe' are untimely and 'John Doe' must therefore be dismissed." (citing *Herrera*, 8 F.4th at 498)).

### 4.5    State Law Claims

As an initial matter and as explained *supra* Section 4.1, no rational jury could find that Officer Doe was involved in either of Plaintiffs' injuries (and there is no allegation of respondeat superior liability against him, *see supra* note 10), so there is no basis for the assault and battery claims against him. The Court will dismiss with prejudice Plaintiffs' assault and battery claims as to Officer Doe.

Defendants argue that Olson's claims must be dismissed because he "failed to comply with [Wisconsin's notice of claim requirement] entirely." ECF No. 64 at 23 (citing WIS. STAT. § 893.80(1d)(a)). "[A]s a precondition to suit against a municipality or its employees, . . . notice [must] be served upon the municipality or employee within 120 days after the happening of the event giving rise to the claim." *Bonchek v. Nicolet Unified Sch. Dist.*, No.

19-CV-425-JPS, 2019 WL 7049803, at *13 (E.D. Wis. Dec. 23, 2019) (citing WIS. STAT. § 893.80(1d)(a)). Plaintiffs concede in their brief that Olson failed to comply with this requirement. ECF No. 71 at 26. Accordingly, Olson's remaining state law claims of assault and battery against Deputy Robakowski and Officer Jacobs will be dismissed without prejudice. *See Bonchek*, 2019 WL 7049803, at *13 ("The appropriate remedy for a plaintiff's failure to allege compliance with a condition precedent[, such as that of Wisconsin Statutes § 893.80(1d)(a),] is dismissal without prejudice." (citing *Ponchik v. Wisconsin*, No. 05-C-0202, 2006 WL 399640, at *1 (E.D. Wis. Feb. 16, 2006))). The Court notes, however, that "it may now be too late to satisfy [the notice of claim] requirement." *Wells v. Govier*, No. 18-cv-693-jdp, 2020 WL 2112271, at *1 (W.D. Wis. May 4, 2020).

Defendants concede that Schukar complied with the notice of claim statute as to Deputy Robakowski but argue that Schukar failed to comply with the notice of claim requirement as to Officer Jacobs, a DPD officer, because she did not serve him or the City of Delafield with a notice of claim. ECF No. 64 at 24. Notice is required before suing an "officer, official, agent[,] or employee" of a municipal entity. WIS. STAT. § 893.90(1d). "Failure to give the requisite notice shall not bar action on the claim if the . . . corporation, subdivision[,] or agency [of which the individual defendant was an officer, official, agent, or employee] had actual notice of the claim and . . . the delay or failure to give the requisite notice has not been prejudicial to" the municipal entity. *Id.* at § 893.90(1d)(a).

Plaintiffs argue that they have satisfied this requirement because Waukesha County and a "variety of jurisdictions" received Schukar's notice of claim, and Officer Jacobs was "under the command" of WCSO as part of the Waukesha County CDU during the events giving rise to this suit.

ECF No. 71 at 27 (citing ECF No. 69 at 5; ECF Nos. 1-1, 1-2). They argue that the City of Delafield was not prejudiced by not receiving notice because Waukesha will indemnify Officer Jacobs in any case (though they provide not citation or verification of this information). *Id.* They finally note that it would not have been possible, before engaging in discovery in this case, to know that Officer Jacobs was actually working for DPD. *Id.*

Plaintiffs have not established that Officer Jacobs was working as an "officer, official, agent[,] or employee" of Waukesha County. Working for a multijurisdictional task force, even one which bore Waukesha County's name like the CDU, did not necessarily make Officer Jacobs an officer or agent of Waukesha County. Even if it did, Plaintiffs have not pointed to legal authority that supports reading Wisconsin Statutes § 893.90(1d) in this way. Plaintiffs have also not established that Waukesha County would indemnify Officer Jacobs or that this bears on the application of Wisconsin Statutes § 893.90(1d)(a) in any way. Underdeveloped as Plaintiffs' arguments are, the Court will bypass ruling on this question, and instead assume without deciding that Schukar's notice of claim was served on Officer Jacobs in accordance with Wisconsin law.

The Court therefore examines whether to retain supplemental jurisdiction over Schukar's state assault and battery claims against Officer Jacobs and Deputy Robakowski.

Defendants argue that these claims are precluded by the doctrine of governmental or discretionary immunity, or in the alternative, that the Court may decline supplemental jurisdiction over these claims. ECF No. 64 at 29–33, 34–35.

Because the Court has now "dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction

over" Plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c)(3). "[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The Court "has broad discretion to decide whether to . . . relinquish supplemental jurisdiction," once all "federal claims drop out of a case," and should "weigh the factors of judicial economy, convenience, fairness, and comity." *Rongere v. City of Rockford*, 99 F.4th 1095, 1106 (7th Cir. 2024) (first citing *RWJ Mgmt. v. BP Prods. N.A., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) then citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Retaining supplemental jurisdiction might be proper, for example, when "the statute of limitations has run on the pendent claim[s], precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251 (citing *Duckworth v. Franzen*, 780 F.2d 645, 656 (7th Cir. 1985) and *O'Brien v. Cont'l Ill. Nat'l Bank & Tr.*, 593 F.2d 54, 65 (7th Cir. 1979)). It might also be proper when "substantial judicial resources have already been committed" to the case or when "it is absolutely clear how the pendent claims can be decided." *Id.* (quoting *Graf v. Elgin, Joliet, & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). "A general presumption in favor of relinquish[ing supplemental jurisdiction] applies[, however,] . . . where . . . the state-law claims . . . raise unsettled legal issues." *Rongere*, 99 F.4th at 1106 (quoting *RWJ Mgmt.*, 672 at 478).

For the reasons stated below, the Court finds that relinquishing supplemental jurisdiction over Schukar's assault and battery claims against Officer Jacobs and Deputy Robakowski is the most prudent course of action.

Defendants argue that Plaintiffs' assault and battery claims are barred by discretionary immunity. ECF No. 64 at 26–27, 29–33. Wisconsin

public officials and employees "enjoy immunity from liability for injuries resulting from the performance of any discretionary act within the scope of their governmental employment." *Wilson v. City of Milwaukee*, 138 F. Supp. 2d 1126, 1130 (E.D. Wis. 2001) (quoting *Kierstyn v. Racine Unified Sch. Dist.*, 596 N.W.2d 417, ¶ 13 (Wis. 1999)). Governmental immunity does not apply to "actions that are 'malicious, willful, and intentional.'" *Willow Creek Ranch, LLC v. Town of Shelby*, 611 N.W. 693, ¶ 26 (Wis. 2000) (quoting *Kierstyn*, 596 N.W.2d at ¶ 16 n.8); *see also Bicknese v. Sutula*, 660 N.W.2d 289, ¶ 19 (Wis. 2003) (explaining that this exception to governmental immunity requires proof of intent to injure or to commit a wrongful act).

Plaintiffs allege that Deputy Robakowski and Officer Jacobs acted maliciously, willfully, and intentionally. ECF No. 56 at 24, 27, 29. The civil torts of assault and battery both require intent to cause physical or bodily harm as an element. ECF No. 67 at 8–15 (parties' joint jury instructions (citing Wis. Civil Jury Instructions 2004 & 2005 (2011))). Plaintiffs urge the Court to broadly formulate the intent element, stating that "[u]nder the doctrine of transferred intent, the intent to commit an intentional tort is transferred from the intended victim to the injured bystander, making the actor civilly liable to the bystander." ECF No. 71 at 29–30 (citing *Rivera v. Safford*, 377 N.W.2d 187, 189 (Wis. Ct. App. 1985); RESTATEMENT (SECOND) OF TORTS §§ 16(2), 20(2); and *Tatum ex rel. Blacks v. United States*, No. 15-CV-453, 2015 WL 5513145, at *3 (E.D. Wis. Sept. 17, 2015)). Essentially, Plaintiffs argue that even if the Court finds that the officers did not intend to harm Plaintiffs specifically, the officers' intent to harm protesters by firing less-than-lethal munitions into a crowd can be recognized as an intent to harm bystanders (Plaintiffs), thereby taking Plaintiffs' assault and battery claims

outside the realm of governmental immunity. If intent to harm can be proven, governmental immunity does not apply.

Defendants argue that no Wisconsin case has applied the doctrine of transferred intent "to a law enforcement officer's discretionary use of force against a citizen." ECF No. 73 at 16–17 & n.4. Indeed, the Court has not located a Wisconsin case applying transferred immunity to civil assault and battery claims against law enforcement officers, and it is unclear whether Wisconsin courts would do so.

On one hand, Wisconsin's pattern civil jury instructions state, without citation to authority, that the "intent" requirement means that the defendant had "the mental purpose to cause bodily harm to (plaintiff) (or another person) or was aware that his or her conduct was practically certain to cause bodily harm to (plaintiff) (or another person)." Wis. Civil Jury Instructions 2004 & 2005 (2011) (underlining removed).

On the other hand, a single civil case (*Rivera*, which Plaintiffs cite) discusses the doctrine of transferred intent in the context of a worker's compensation claim and declines to apply it there in light of statutory language. 377 N.W.2d at 189 (holding that "[t]he obvious and ordinary meaning of the phrase 'assault intended to cause bodily harm' is that the assault must be actually intended to cause harm to the injured employee," and not the plaintiff, who was an injured bystander (quoting WIS. STAT. § 102.03(2)). The doctrine has been applied in the criminal context, but that does not control the outcome here. For example, in *State v. Austin*, the Wisconsin Court of Appeals rejected a criminal defendant's argument that a jury instruction permitting the jury to apply the doctrine of transferred intent was unconstitutional. 308 N.W. 770, *1–3 (Wis. Ct. App. 1981) (Table). But the criminal battery statute under which the defendant was charged

explicitly states that the crime occurs when a person acts "with intent to cause bodily harm to that person or another." *Id.* at *2 (citing WIS. STAT. § 940.19(1)); WIS. STAT. § 940.19(1); *see also State v. Gould*, 202 N.W.2d 903, 904 (Wis. 1973) (explaining that the Wisconsin legislature purposefully added language reflecting adoption of the doctrine of transferred intent to this statute). There is no parallel statute defining the elements of Plaintiffs' civil assault and battery claims that would support application of the doctrine of transferred intent on such claims.

In these circumstances, the Court does not believe it appropriate to opine on whether Wisconsin (whether through its courts or legislature) intends for the doctrine of transferred intent to extend to civil intentional tort claims.[18] The Court is aware that Schukar's assault and battery claims against Officer Jacobs and Deputy Robakowski are subject to a three-year statute of limitations, WIS. STAT. § 893.54, so they would be time-barred if Plaintiffs refiled them in a separate suit in state court. *See supra* Section 4.4. Typically, this is a good reason to retain supplemental jurisdiction. *Wright*, 29 F.3d at 1251 (citation omitted). But it is not "absolutely clear" how these

---

[18]Defendants also argue that the doctrine of transferred intent should not be applied "within the context of privilege afforded to officers" and because Plaintiffs "have not identified any evidence that the offending uses of force—which they concede were directed against persons other than themselves—were not reasonably necessary to accomplish Defendants' legally authorized purposes." ECF No. 73 at 17; *see also* ECF No. 64 at 30–33 (discussing privilege). The question of LEO privilege requires examination of whether the amount of force used was "reasonably necessary." *Wirsing v. Krzeminski*, 213 N.W.2d 37, 41 (Wis. 1973) (citing *Schulze v. Kleeber*, 103 N.W.2d 560 (Wis. 1960)). The Court has declined to rule on this question with respect to Plaintiffs' Fourth Amendment claim, *supra* Section 4.3. This is another good reason for the Court not to weigh in on whether the doctrine of transferred intent applies to civil intentional tort claims in Wisconsin: doing so would require examining the intersection of a legal issue that the Court is not entertaining at this juncture.

claims should be decided, *id.* (citation omitted), and there is a presumption in favor of relinquishing jurisdiction of state law claims when the underlying law is unsettled, *Rongere*, 99 F.4th at 1106. Further, these claims would still be timely under 28 U.S.C. § 1367(d) or otherwise may be saved from the statute of limitations via equitable tolling. *State ex rel. Davis v. Cir. Ct. for Dane Cnty.*, 4 N.W.3d 273, ¶ 39 (Wis. 2024) ("Courts may invoke equitable tolling when a party misses a deadline due to factors outside the party's control." (citing *State ex rel. Griffin v. Smith*, 677 N.W.2d 259, ¶ 37 (Wis. 2004)).

Considering all of this, the wiser exercise of the Court's discretion is to decline supplemental jurisdiction over these claims, leaving it to Plaintiffs to pursue their theory about the doctrine of transferred intent if they so desire and permitting the Wisconsin courts to rule on it when appropriate. Therefore, Schukar's assault and battery claims against Officer Jacobs and Deputy Robakowski will be dismissed without prejudice.

### 5.      MOTION FOR SANCTIONS

Defendants seek sanctions under 28 U.S.C. § 1297 in the form of their "excess costs, expenses, and attorneys' fees reasonably incurred because of Plaintiffs' conduct in litigating summary judgment." ECF No. 75 at 1. The gist of Defendants' motion is that Plaintiffs, through the course of this litigation, repeatedly refused to dismiss various claims that they now voluntarily dismiss or concede as unmeritorious or premature in their summary judgment briefing. *Id.* at 4–5. Plaintiffs oppose the motion, arguing that they had no reason to believe that these claims were unmeritorious until Defendants provided them with relevant legal authority at summary judgment. ECF No. 76 at 1–2. They contend that if Defendants wished to dispose of various claims, they could have sought to

do so through a motion to dismiss but did not do so and that Defendants are in the same position now as they would have been in had they filed a Rule 12 motion. *Id.* at 9–10 (citing *Fail-Safe, LLC v. A.O. Smith Corp.*, No. 08-CV-310, 2011 WL 1002838, at *2 (E.D. Wis. Mar. 18, 2011)). Plaintiffs additionally argue that their conduct in this case is nothing more than zealous advocacy, pointing to other cases in which this Court found sanctions inappropriate. *Id.* at 15–17 (citing *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 902 (E.D. Wis. 2017) and *Strohbehn v. Weltman Weinberg & Reis Co. LPA*, No. 16-CV-985-JPS, 2018 WL 1997989, at *1–2 (E.D. Wis. Apr. 27, 2018)).

"A court has discretion to impose Section 1927 sanctions when an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious and studied disregard for the orderly process of justice.'" *Fail-Safe*, 2011 WL 1002838, at *1 (quoting *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006)). "Alternatively, a court inherently has discretion to award attorneys' fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "Ultimately, it is wholly within the court's discretion to impose sanctions, as Section 1927 is 'permissive, not mandatory.' . . . Even assuming [Plaintiffs'] attorneys' conduct was 'unreasonable and vexatious,' the court is still not obliged to impose sanctions." *Id.* at 2 (quoting *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1014 (7th Cir. 2004)).

The Court will deny Defendants' motion without wading too far into the parties' arguments. On one hand, the Court is not convinced by Plaintiffs' contention that their attorneys could not have known that many of their claims lacked merit until Defendants' counsel provided authority

demonstrating as much. Plaintiffs' counsel are seasoned litigators who focus primarily on civil rights cases in Wisconsin courts. *See* CADE LAW GROUP, https://cade-law.com/ [perma.cc/47R2-NGZ5] (last visited Sept. 15, 2025). It is implausible that Plaintiffs' counsel did not know, for example, that monetary damages are not available for claims under the Wisconsin Constitution. ECF No. 64 at 25–26 (Defendants raising this argument); ECF No. 71 at 28 (Plaintiffs conceding this argument). On the other hand, the Court agrees with Plaintiffs that Defendants are not significantly worse off for having secured dismissal of certain claims during summary judgment briefing instead of earlier in the case. The same facts underlie Plaintiffs' federal and state claims, so no additional discovery was required. And, like Plaintiffs' counsel, Defendants' counsel routinely defend municipalities in civil rights cases. *See Practices*, CRIVELLO NICHOLS & HALL, S.C., https://www.crivellolaw.com/practices/ [perma.cc/84LR-JUJ6] (last visited Sept. 15, 2025); *Practice Areas*, WIRTH + BAYNARD, https://wbattys.com/practice-areas/ [perma.cc/8MWF-KBAD] (last visited Sept. 15, 2025). It is therefore unlikely that they were required to spend a substantial portion of time doing legal research from scratch to secure dismissal of the claims that Plaintiffs concede lack merit, because Defendants' counsel have likely encountered these issues many times in the past. Finally, as demonstrated by the extent of the above analysis, this case presented challenging factual and legal issues. Plaintiffs were not litigating frivolous federal claims and victory for Defendants was not a foregone conclusion. Considering these facts, the Court will not conclude that Plaintiffs' counsel acted in an objectively unreasonable manner or with bad faith and will therefore deny Defendants' motion for sanctions.

## 6.    CONCLUSION

Defendants' motion for summary judgment will be granted as stated herein. Plaintiffs' First Amendment, Fourth Amendment, and Fourteenth Amendment equal protection claims against Officer Doe, Deputy Robakowski, Officer Jacobs, Sheriff Beth, Sheriff Severson, Captain McElderry, Lieutenant Olinger, and the Doe Defendants will all be dismissed with prejudice. Because Plaintiffs' *Monell* claims stand dismissed, any federal claims that Plaintiffs are attempting to raise against Kenosha County and Waukesha County will accordingly be dismissed with prejudice. Defendants' Fourteenth Amendment due process claim will be dismissed without prejudice. The Court dismisses with prejudice both Plaintiffs' state law assault and battery claims as to Officer Doe, dismisses without prejudice Olson's assault and battery claims as to Officer Jacobs and Deputy Robakowski, and relinquishes supplemental jurisdiction over and therefore dismisses without prejudice Schukar's assault and battery claims against Officer Jacobs and Deputy Robakowski. Plaintiffs' other state law claims will all be dismissed without prejudice. Defendants' motion for sanctions will be denied.

Accordingly,

**IT IS ORDERED** that Defendants Kenosha County, Sheriff David G. Beth, Brian Doe, Waukesha County, Sheriff Eric J. Severson, Steven Robakowski, Frank McElderry, Nicholas Olinger, and Ryan Jacobs's motion for summary judgment, ECF No. 63, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Kenosha County, Sheriff David G. Beth, Brian Doe, Waukesha County, Sheriff Eric J. Severson, Steven Robakowski, Frank McElderry, Nicholas Olinger, and

Ryan Jacobs's motion for sanctions, ECF No. 74, be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Plaintiffs Alyssa Schukar and Scott Olson's First Amendment, Fourth Amendment, and Fourteenth Amendment equal protection claims against Kenosha County, Sheriff David G. Beth, Brian Doe, Waukesha County, Sheriff Eric J. Severson, Steven Robakowski, Frank McElderry, Nicholas Olinger, Ryan Jacobs, Kenosha County Sheriff Deputies John Does 1–10, Waukesha County Sheriff Deputies John Does 1–10, and Unknown Law Enforcement John Does 1–10 be and the same are hereby **DISMISSED with prejudice**;

IT IS FURTHER ORDERED that Plaintiffs Alyssa Schukar and Scott Olson's Fourteenth Amendment due process claim be and the same is hereby **DISMISSED without prejudice**;

IT IS FURTHER ORDERED that Plaintiffs Alyssa Schukar and Scott Olson's state law assault and battery claims against Defendant Brian Doe be and the same are hereby **DISMISSED with prejudice** for lack of personal involvement;

IT IS FURTHER ORDERED that Plaintiff Scott Olson's state law claims of assault and battery against Defendants Ryan Jacobs and Steven Robakowski be and the same are hereby **DISMISSED without prejudice** for failure to comply with Wisconsin's notice of claim requirement;

IT IS FURTHER ORDERED that the Court **RELINQUISHES** supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff Alyssa Schukar's state law assault and battery claims against Defendants Ryan Jacobs and Steven Robakowski and these claims be and the same are hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiffs Alyssa Schukar and Scott Olson's state law claims under the Wisconsin constitution, for failure to train, and for indemnification under § 895.46, against Defendants Kenosha County, Sheriff David G. Beth, Brian Doe, Waukesha County, Sheriff Eric J. Severson, Steven Robakowski, Frank McElderry, Nicholas Olinger, Ryan Jacobs, Kenosha County Sheriff Deputies John Does 1–10, Waukesha County Sheriff Deputies John Does 1–10, and Unknown Law Enforcement John Does 1–10 be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge